[Crim. No. 1455. First Appellate District, Division One.—July 24, 1928.]

THE PEOPLE, Appellant, v. JESUS PRUDENCIO, Respondent.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Earl Warren, District Attorney, and J. Paul St. Sure, Assistant District Attorney, for Appellant.

Myron Harris, L. A. Sullivan, J. J. Rose, Jr., and John Jewett Earle for Respondent.

KNIGHT, J.—This is an appeal by the People from an order granting defendant's motion for a new trial. The grounds urged for reversal are that at the time the motion was granted the trial court was without jurisdiction to hear or determine the same, and that even though jurisdiction did exist to entertain the motion, the granting of the same constituted an abuse of discretion.

The facts are as follows: The defendant was charged with murder by an information alleging that he did "unlawfully, wilfully, feloniously, and of his malice aforethought kill and murder one Antonio Garcia." He entered a plea of not guilty, and upon trial the cause was submitted to the jury by the court under customary instructions to the effect that if it found that the defendant was guilty it should declare the degree of murder, and that if it found that he was guilty of murder in the first degree it should also determine and indicate by its verdict whether he should suffer death as a penalty therefor or be imprisoned in the state prison for life. Several forms of verdict were prepared and given to the jury by the court, and on January 12, 1927, the jury rendered its verdict finding defendant guilty of murder in the first degree without making recommendation as to penalty, which, under the law, was a determination that the defendant should suffer the penalty of death. Pursuant to said verdict the defendant was brought

before the court on January 15, 1927, for the pronouncement of judgment, at which time he moved for a new trial on all the grounds set forth in section 1181 of the Penal Code, including the ground that the verdict was contrary to the evidence; he also made a motion in arrest of judgment. The motions were regularly continued until January 22, 1927, on which date they were argued and submitted; whereupon the trial judge declared that the evidence, in his opinion, did not establish a case of murder in the first degree, but was sufficient to prove murder in the second degree, and ignoring the effect of the verdict rendered by the jury imposed a sentence for second degree murder.

Thereafter the People applied for and obtained from the supreme court an alternative writ of mandate commanding the trial judge to show cause why the judgment pronounced by him should not be annulled and set aside as being in excess of his jurisdiction and to show cause also why judgment imposing the death sentence should not be pronounced in accordance with the verdict rendered by the jury. After hearing upon the merits the supreme court held that no substantial ground existed upon which the judgment as entered could be sustained, that it was clearly without authority of law and did not purport to respond to any verdict rendered by the jury; and in ordering a peremptory writ of mandate to issue the supreme court said: "The defendant in the instant case has not been arraigned for sentence upon the verdict rendered by the jury convicting him. Neither has sentence or judgment been pronounced by the court upon said verdict. The court positively refuses to recognize the verdict received by it or to pronounce judgment thereon or take any steps whatever upon the verdict rendered, as shown by the return herein. The court was without jurisdiction to pronounce judgment upon an assumed verdict of murder in the second degree and the judgment so pronounced must be annulled. We are of the opinion that petitioner has no plain, speedy, or adequate relief in the premises. (Sec. 1068, Code Civ. Proc.) It appearing that the court without any lawful cause refuses to pronounce judgment upon the verdict of the jury as rendered, or to take other legal or appropriate action thereunder or perform acts which the law specially enjoins upon said judge and court as a duty resulting from the office

which said judge occupies, it is ordered that a writ of mandate issue out of this court commanding said Hon. Fred V. Wood, as Judge of the Superior Court of the County of Alameda, to arraign said Jesus Prudencio, defendant in said action pending in said court, for judgment, under and by virtue of the verdict returned against him, to-wit, conviction of murder in the first degree as charged in the information, and to hear and determine such motions as may properly come before him and to take such proceedings therein as are meet and proper in the premises and as by law provided.'' (*People* v. *Superior Court of Alameda County*, 202 Cal. 165 [259 Pac. 943].)

In obedience to said writ the defendant was again brought before the trial court on November 10, 1927, at which time he was arraigned for judgment upon the verdict rendered by the jury and he again urged his motion for a new trial, which the court granted; and from the order made in that behalf the People have taken this appeal.

It appears to be well settled in this state that where a defendant has previously and within the time allowed by law interposed a motion for new trial which is duly heard and denied, he has exercised and exhausted ·the right afforded him by the law and thereafter the court is without power to entertain another similar motion (*People* v. *Walker*, 142 Cal. 90 [75 Pac. 658]; *People* v. *Ingersoll*, 21 Cal. App. 763 [132 Pac. 1052]); and in view of the foregoing rule of law appellant in the present case contends that the proceedings which took place before the trial court on January 22, 1927, amounted to a denial of the defendant's motion for a new trial and that therefore ''the trial court exercised and exhausted its power to pass upon such motion and that the said court was thereafter without jurisdiction (on November 10, 1927) to hear and determine a similar motion in said cause.''

The record discloses, however, that the motion defendant made on January 22, 1927, and which he was entitled to have determined was not at that time ruled upon. With reference thereto the record shows that when defendant's motion for a new trial was submitted in January, 1927, the trial court reviewed what it claimed was the evidence in the case and in the course of its remarks said: ''The evidence does not satisfy my mind that this man is guilty of first

degree murder. . . . I feel it is a case that there was no intent to kill. I have deep convictions on that matter. He was guilty of an assault with a deadly weapon. That is a felony, and it makes it murder of the second degree. . . . This defendant is guilty of murder of the second degree. I am convinced in my mind it is not murder of the first degree. . . . My own feeling is, it is murder of the second degree. . . . I do not believe he is guilty of the first degree. I do not feel it was a wilful intent to kill. I am not going to sentence a man for a crime when I have heard the evidence and don't believe he is guilty. . . . I hold that there is no evidence whatever to sustain a verdict of murder in the first degree in this case, and that the verdict does find the defendant guilty of murder of the second degree, and I am going to act accordingly. . . . *The defendant's motion for a new trial for murder of the second degree is denied.* Let him be arraigned for sentence.'' Thereupon the trial court made the following order, which it caused to be entered upon its minutes: '' . . . The court finds and decides that there is no evidence to sustain a verdict of and the defendant is not guilty of murder in the first degree, *but that the evidence does sustain and the verdict does find the defendant guilty of murder in the second degree as charged in the information, and that a new trial upon said charge of murder in the second degree be and the same is hereby denied,* and that the defendant be arraigned for judgment.'' (All italics ours.) The clerk then proceeded to arraign the defendant for judgment, by informing him, among other things, as the judgment recites, ''of the decision of the court that the evidence sustains and that the defendant is guilty of murder in the second degree in the commission of a felony, to-wit: an assault with a deadly weapon by means likely to produce death or other bodily injury as charged in the information, and that his motion for a new trial for murder in the second degree was denied''; following which the defendant was asked whether he had any cause to show why judgment should not be pronounced against him, and no sufficient cause being shown the court rendered judgment as follows: '' . . . That whereas the defendant, Jesus Prudencio, had been duly convicted in this court of felony, to-wit: Murder of the second degree, that he therefore be

confined in the state prison at San Quentin as prescribed by law . . . ''

▉ It appears, therefore, as indicated, that when the defendant was arraigned for judgment in January, 1927, the trial court did not attempt to decide the motion which the defendant at that time made, namely, a motion for a new trial based upon the degree of murder of which he had been found guilty by the jury, but purported to pass upon a motion which the defendant had not made and which was not before the court, namely, a motion for a new trial based upon a conviction of second degree murder. That being so, we are of the opinion that on November 10, 1927, when the matter again came before the court, the defendant was entitled to renew his motion and to have the same considered and determined.

That the supreme court was also of the opinion that defendant's motion for a new trial based upon the verdict as rendered by the jury had not theretofore been disposed of is clearly indicated by its decision in the *mandamus* proceeding because its mandate to the trial judge was to arraign the defendant ''for judgment, under and by virtue of the verdict rendered against him, to-wit, conviction of murder in the first degree as charged in the information, *and to hear and determine such motions as may properly come before him*, and to take such proceedings therein as are meet and proper in the premises and as by law provided'' (Italics ours), and the only motions authorized by statute which could thereafter properly come before the trial court for determination were motions for a new trial and in arrest of judgment.

▉ The delay in ruling upon the motion which ensued as a result of the trial court's action on January 22, 1927, cannot be held to have nullified defendant's motion for the reason that every person convicted of crime, and certainly one who has been found guilty of first degree murder and adjudged to suffer death as a penalty therefor, is afforded the right under the law of this state to make a motion for a new trial based upon the verdict which has been rendered against him, and if presented in the manner and within the time provided by law, and no similar motion has been previously ruled upon, has the right to have such motion heard and determined by the trial judge. Under some circum-

stances the refusal of the trial court to hear defendant's motion for a new trial or to determine the same within the statutory period entitles the defendant to a new trial (Pen. Code, sec. 1202; *Rankin* v. *Superior Court*, 157 Cal. 189 [106 Pac. 718]; *People* v. *Boling*, 32 Cal. App. 42 [161 Pac. 1169]; *People* v. *Winner*, 31 Cal. App. 352 [160 Pac. 689]). But manifestly the failure, neglect, or refusal on the part of the trial judge to perform a duty thus imposed upon him by the law, whether resulting from inadvertence or error, cannot operate to the prejudice of such person and thereby deprive him of the right to a new trial, if otherwise he is legally entitled to the same.

 The remaining question is whether the granting of the motion herein constituted an abuse of discretion on the part of the trial judge. The rules which shall govern the trial court in dealing with such motions and the courts of appellate jurisdiction in reviewing the decisions of the trial courts thereon are well established and clearly defined, and in the case of *People* v. *Knutte*, 111 Cal. 453 [44 Pac. 166], are stated as follows: "It has been so repeatedly held here as to become axiomatic that where a new trial is granted upon this ground, or where it is one of various grounds upon ·which the trial court may have based the order, its action will not be disturbed, except in a case showing a manifest and unmistakable abuse of discretion. This discretion is, of course, not arbitrary, but like any other judicial function, is to be exercised under the sanction of the judicial oath; and the strong presumption being always that it was so exercised, it will require in any case a very clear showing to the contrary to overcome such presumption and enable us to say that the power of the court in that respect was abused. While it is the exclusive province of the jury to find the facts, it is nevertheless one of the most important requirements of the trial judge to see to it that this function of the jury is intelligently and justly exercised. In this respect, while he cannot competently interfere with or control the jury in passing upon the evidence, he nevertheless exercises a very salutary supervisory power over their verdict; in the exercise of that power he should always satisfy himself that the evidence as a whole is sufficient to sustain the verdict found, and, if in his sound judgment it is not,

he should unhesitatingly say so, and set the verdict aside. (*People* v. *Yum Yit,* 83 Cal. 130 [23 Pac. 228].)

The rules are restated in *People* v. *Petros,* 25 Cal. App. 236 [143 Pac. 246], in the following language: "The rule is thoroughly settled that 'the granting or denying a new trial on the ground that the evidence is insufficient to justify the verdict, where there is a substantial conflict in the evidence, rests so fully in the discretion of the trial court that its action is conclusive upon this court, unless it appears that there has been an abuse of discretion.' (*Domico* v. *Casassa,* 101 Cal. 413 [35 Pac. 1024]; *Warner* v. *Thomas etc. Works,* 105 Cal. 411 [38 Pac. 960]; *Eidinger* v. *Sigwart,* 13 Cal. App. 667, 676 [110 Pac. 521, 524], and cases therein cited.) 'Indeed, it has repeatedly been said in the cases that the action of a trial court in granting a new trial upon the ground of the insufficiency of the evidence to justify the decision "is so far a matter within its discretion that, if there is *any appreciable conflict* in the evidence it is not open to review."' (*Newman* v. *Overland Pac. Ry. Co.,* 132 Cal. 74 [64 Pac. 110]; *Otten* v. *Spreckels,* 24 Cal. App. 251 [141 Pac. 224].) . . . While a trial court will not be allowed to trespass upon the functions of the jury, it is nevertheless true that it is invested with a supervisory control over a trial before a jury and is legally authorized to grant a new trial where it entertains a well-founded opinion, or one which appears to be sufficiently well-founded to preclude a reviewing court from declaring it not to be, that the result reached by the jury is not justified by the evidence. And, in determining this question upon a motion for a new trial, the trial court may, of course, pass upon the probative value of the testimony submitted in proof of the charge against the accused. In other words, such court may consider, examine, and scrutinize the testimony by the aid of those tests by which the jury are required to measure the worth and weight of the proofs adduced in substantiation of the charge, and if it thus reaches the conclusion that the jury, to reach its conclusion, must have accorded to such testimony undue weight and credit—that is to say, if it be persuaded by a just and fair consideration of the testimony that it is insufficient to establish guilt beyond a reasonable doubt, and that the jury formed an erroneous judgment on the probative power of the evidence—and, accordingly, in the

exercise of the discretion committed to it as to such matters, grants a new trial, the order grantng the motion must then be held to stand free from disturbance by a court of review.'' To the same effect are: *People* v. *Chew Wing Gow,* 120 Cal. 298 [52 Pac. 657]; *People* v. *Lum Yit, supra; People* v. *Bainbridge,* 169 Cal. 166 [146 Pac. 427]; *People* v. *Washington,* 86 Cal. App. 133 [260 Pac. 806]; *People* v. *Dewar,* 49 Cal. App. 263 [193 Pac. 156]; *People* v. *Canfield,* 173 Cal. 309 [159 Pac. 1046]. In the case last cited the court goes on to say: ''We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge''; and in this connection Mr. Justice Temple, the author of the opinion in the case of *People* v. *Chew Wing Gow, supra,* declares that ''no case (in this state) can be found in which an order granting a new trial in a criminal case for insufficiency of evidence was reversed,'' to which statement counsel for defendant add, without challenge on the part of appellant, that since the case last above cited was decided, no such judgment of reversal has been rendered.

Turning, then, to the evidence in the case at bar, it is found to be in serious conflict as to the circumstances attending the homicide. Defendant admitted that he shot the deceased with a rifle, but claimed that he did so in self-defense. The shooting occurred on the night of October 14, 1927, in a public street or alley in the rear of defendant's residence, the defendant at the time being some distance from the deceased; and although disinterested witnesses saw defendant firing the shots, they were unable to observe the conduct of the deceased, on account of the darkness. Earlier in the evening both men had been in a poolroom where the deceased in the presence and hearing of defendant, as the prosecution claims, received change for a $50 bill. Shortly thereafter, according to the dying statement of the deceased, who had been drinking, defendant invited him to his home to have some wine; and on the way there defendant attempted, with the aid of a pistol, to rob him of his money, but was finally persuaded by the deceased not to do so. A pistol was afterward found on the defendant's person, but

it proved to be a toy pistol. The deceased further stated that following the attempted robbery, defendant proceeded on toward his home, and that he followed him there for the purpose of obtaining the wine which the defendant had promised him; that when he arrived at the door of the defendant's house defendant appeared with a rifle, ordered him away from the premises and that as he was proceeding down the alley away from the house the defendant shot him. The evidence shows without dispute that defendant fired several shots but that only one took effect, the bullet having entered the deceased's back and passed through his body. Just about that time two officers who had been previously summoned to the scene drove into the alley and in the glare of the lights from their automobile saw the wounded man and also the defendant, who was retreating toward his house with his rifle in hand.

In his own behalf defendant testified that he had not invited the deceased to his home, but that after he arrived there the deceased, being partially intoxicated at the time, forced his way into the home, threatening violence to defendant and his wife with a knife which the deceased was exhibiting; that he then procured his rifle and drove the deceased from the house into the street, where the deceased continued his menacing attitude; that meanwhile he stood on the porch of his house and in order to frighten the deceased away fired several shots in the air, the bullets going through the roof of the porch; that suddenly he saw the deceased turn and come toward him with knife in hand, and that thereupon he fired directly at the deceased. The evidence further shows that when the officers appeared immediately following the shooting the defendant told them to "look out," that the deceased had a knife; whereupon the officers searched the deceased and found upon his person an open knife such as is used in canneries, wrapped in a piece of newspaper. Defendant's testimony as to the deceased invading his home was corroborated by the testimony of his wife; and his statements about ordering the deceased away from the premises were partially supported by the testimony of a neighbor, who stated that after hearing the first shot he went to the rear of his house to ascertain the cause of it, and that while there saw the defendant holding a rifle in his

hand ordering someone away from the house; but in direct contradiction of the defendant's story the neighbor stated that the defendant did not remain on the porch, as defendant claimed, but that he followed the man out into the street, stopping every few steps to take deliberate aim and fire. Defendant's testimony was further contradicted by evidence showing that no bullet holes were to be found in the roof of his porch.

 It would seem unnecessary to narrate any additional evidence adduced at the trial, for the reason that the portions already set forth are sufficient to show that substantial conflict existed on essential points bearing upon the question of the defendant's guilt or innocence; and in that state of the record we are not permitted, under the authorities quoted, to interfere with the decision of the trial judge in the granting of said motion. "Whatever may be our view of the sufficiency of the evidence constituting respondent's defense to the charge, it is not the function of this court to substitute its discretion for that which is vested in the trial court" (*People* v. *Claiborne,* 63 Cal. App. 598 [219 Pac. 721]). As said in *People* v. *Ostrander,* 23 Cal. App. 241 [137 Pac. 619], "the trial judge was called upon to review the testimony in determining whether the verdict was substantiated by the evidence, and he evidently gave credit to the statement of the defendant. It may be remarked that as the testimony appears in the cold record the explanation made by defendant is hardly worthy of credence . . . ; still, having seen and heard the witnesses the trial judge was authorized and required to draw his conclusions as to the sufficiency of the evidence to sustain the conviction, and in such a case this court cannot interfere with his determination on that matter. There was a conflict of evidence, and therefore on this appeal a question of law is not presented."

In further support of the trial court's order granting a new trial defendant contends that he was entitled to the order as a matter of statutory right because his motion for a new trial had not been determined by the trial court within the statutory period (Pen. Code, secs. 1191 and 1202; *Rankin* v. *Superior Court, supra; People* v. *Boling, supra; People* v. *Winner, supra*). But in view of the conclusions we have reached upon the other phase of the case, we deem discus-

sion and determination of the point last mentioned unnecessary.

For the reasons given the order appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.