[Crim. No. 2249. First Dist., Div. One. Mar. 29, 1943.]

THE PEOPLE, Respondent, v. ROBERT CORONADO, Appellant.

Elmer D. Jensen for Appellant.

Earl Warren, Attorney General, and David K. Lener and John F. Hassler, Jr., Deputies Attorney General, for Respondent.

KNIGHT, J.—The appellant was found guilty by a jury of having violated section 266g of the Penal Code, and among the grounds upon which he seeks a reversal is that the evidence is insufficient to support the verdict.

The code section under which he was convicted bears the heading, "Placing or permitting the placing of one's wife in house of prostitution," and it declares as follows: "Every man who, by force, intimidation, threats, persuasion, promises, or any other means, places or leaves . . . his wife in a house of prostitution, or connives at or consents to, or permits, the placing or leaving of his wife in a house of prostitution, or allows or permits her to remain therein, is guilty of a felony . . . ; and in all prosecutions under this section a wife is a competent witness against her husband." It will be noted that the section is couched in broad terms and that the numerous acts specified therein as constituting the crime are stated disjunctively. Therefore, proof of the commission of any one or more of those acts is sufficient to warrant a conviction; and in construing said section the Supreme Court has held that to establish a case thereunder it is not essential for the People to go beyond the terms of the section and allege or prove that an accused, in placing or leaving his wife in the house of prostitution, intended that she should devote herself to prostitution, or that she did in fact afterwards become a prostitute; that the law was designed to prevent a man from placing or leaving his wife in a house of prosti-

tution for any purpose, and that he is guilty of the crime denounced by the section even though he places or leaves her there to engage in some useful occupation, such as cook, seamstress, or housemaid. (*People* v. *Conness*, 150 Cal. 114 [88 P. 821].)

The parties here involved were married in Reno, Nevada, on March 5, 1940; and appellant was arrested in San Jose on May 25, 1942, while occupying an apartment with his wife, on East Santa Clara Street. The evidence in the case consisted in part of the testimony given by appellant and his wife, and the following are some of the material facts appearing therefrom: He was a professional gambler and had been so for several years; and at the time of their marriage she was a prostitute and continued to be such up to within a few days prior to his arrest. He knew at the time of their marriage that she had been making her living as a prostitute, and that thereafter she was continuing to conduct herself as such. Both testified, however, that when they were married she promised him she would thereafter lead a moral life, and that her subsequent immoral conduct was carried on over his protest and against his will. They did not live together continuously following their marriage, but it does not appear from the evidence how much of the time they lived separate and apart, nor when or under what circumstances they left Reno. However, beginning early in March, 1942, or thereabouts, they lived together in a hotel in San Jose for about a month. Most of that time she was ill, but at the end of a month she left the hotel and rented an apartment on East Santa Clara Street, wherein she lived with a soldier for several days, and upon his departure she kept the apartment but became an inmate of a house of prostitution on Berryessa Road, in San Jose. She would leave the apartment every morning between ten o'clock and noon, go out to the resort on Berryessa Road, stay there through the night and return to the apartment around six or seven o'clock in the morning; and the prosecution proved by the testimony of the police officers that during the month of May and prior to the arrest on May 25th the appellant, on four or five occasions, drove his wife from the apartment on East Santa Clara Street out to said resort and left her there. In fact appellant and his wife both testified that he did so on two occasions; and appellant admitted that he knew at the time that the resort was being operated as a house of prostitution. It is quite obvious that the foregoing evidence is legally sufficient to

establish a violation of that portion of the code section which makes it a crime for a man to place or leave, or to connive at, consent to or permit the placing or leaving of his wife in a house of prostitution.

Appellant's defense to the charge was based largely upon the testimony given by himself and his wife to the effect that ever since their marriage he had tried repeatedly to induce her to abandon her immoral mode of life, and that on the two occasions he drove out to the house of prostitution and left her there he did not know she had been an inmate thereof. In this connection they testified that when she left the hotel she did not tell him she was going; and that he did not learn of her whereabouts until about a week prior to his arrest, when he discovered she had been living in the apartment on East Santa Clara Street with a soldier; but that he was unaware that she had been or was then an inmate of the resort on Berryessa Road, and he sought a reconciliation; that while this was going on she asked him to drive out to the resort on Berryessa Road, saying that she wanted to get some things that belonged to her from a girl friend, and that in response to such request he drove her out there twice; that on one of the trips he asked her if she "was working there" and she said she was not. It was within a few days thereafter that he was placed under arrest while in her company in her apartment. At that time he had more than $700 in his possession, but they both testified that it was money he had won gambling; and both testified that he had never accepted any money from her under any circumstances.

It is appellant's contention that the testimony so given by himself and wife constituted a complete defense to the charge, and he bases such contention principally on certain language used in deciding the case of *People* v. *Conness, supra,* wherein the court in reversing the judgment for refusal to give an instruction stated in substance that the meaning of the word "allow" as used in the latter part of the code section was almost identical with that of the word "permit," which is also there used, and implies some sort of assent, active wish, or at least willingness, in his mind, after he had knowledge of her presence in the bawdy house, that she should remain there; that it implies something more than indifference to her whereabouts, or passive sufferance, in a case where the circumstances do not call upon him to interfere. The above doctrine is doubtless controlling in cases arising under that particular provision of the section which makes it a crime

for a man to "allow" or "permit" his wife to remain in a house of prostitution; that is, where she is already there, and after he has knowledge of such fact he does nothing to interfere with her remaining there; but it is apparent that such doctrine can have no application to a case such as we have here, arising under those provisions of the section which make it a crime for a man to place or leave his wife in a house of prostitution, or to connive at, consent to or permit the placing of her there. This is made clear by that portion of the decision in the Conness case wherein the court says: *"Where he does not, directly or indirectly, place or leave her in the house, or connive at, consent to, or permit of her going there* (using the word 'permit' in the same sense which we attribute to the word 'allow'), he must, to some extent, be an accomplice in her remaining there, after he has knowledge of the fact." The distinction between the two types of cases is also apparent from the following instruction which the court quoted with approval in the later case of *People* v. *Duncan,* 22 Cal.App. 430 [134 P. 797]: " 'The words "allow" or "permit" as used in the statute defining the offense alleged in the information imply some sort of assent on the part of the husband to his wife's remaining in a house of prostitution. There must be some active wish or at least willingness in his mind after he has knowledge of her presence in the house that she should continue there. *To prove a defendant guilty of violating such statute, it is not necessary to show that he actually placed his wife in a house of prostitution.* It is only necessary to prove that his wife was in a house of prostitution, that he had knowledge of the fact that it was a house of prostitution and of the fact that his wife was in said house, and that after such husband had such knowledge he allowed or permitted her to remain therein.' " (All italics ours.)

█ In any event, whether appellant connived at or consented to his wife becoming an inmate of the resort on Berryessa Road, or whether ever since their marriage he had, as they claimed, tried to dissuade her from following an immoral life, were questions of pure fact for the jury to determine from all the circumstances shown by the evidence. (*People* v. *Conness, supra.*) It was not bound to accept their testimony as true, and there would seem to be substantial reasons for rejecting it. For instance, appellant and his wife testified that only on two occasions had he driven her out to the resort on Berryessa Road; whereas the prosecution proved by the testimony of police officers that he had driven her

out there four or five times. Furthermore, on one of those occasions, after leaving his wife at the resort and on his way back to town the officers stopped him and asked him a number of questions, and at the trial he admitted that he gave them false answers. They asked him where he had been, and he replied, "Just going around." His wife's given name was Gayle, and they asked him who "the young lady was he had in the car" and he said just a friend; they asked him her name and he replied "Georgia"; that he did not know her last name, that she had "lots of last names." They asked him if she was "working" for him and he replied that he did not have any girls working for him. They then asked him if he was married, and receiving an affirmative reply, they asked where his wife was, and he replied that she was "visiting friends in the south" but he did not know "who the friends were." There was also testimony given in rebuttal by one of the police officers to the effect that "several years back" appellant "was operating girls" at a place on South First Street, in San Jose, but was told by the police that he would not be allowed to do so.

From the above it will be seen that the state of the evidence is such as to preclude this court from holding as a matter of law that the jury was unwarranted in disbelieving the testimony given by appellant and his wife as to his efforts to reform her. In other words, as said in substance in the Conness case, where there is evidence for the defense that the accused's husband tried in various ways to induce his wife to abandon the immoral life she was leading, the credibility of such evidence is within the exclusive province of the jury.

 Also without merit are the contentions urged by appellant with respect to the instructions. The portion of the court's charge quoted in his brief and about which he complains is only part of an instruction which the court gave. The entire instruction as given meets the requirements of the law as laid down in the Conness and Duncan cases, *supra*.

 He also quotes another instruction which he argues the court should have given. But at the trial no such instruction was ever requested or proposed by him; in fact, so far as the record shows, he did not request or propose any instructions; that being so, he is not in a position to complain; and besides, it appears that the subject matter of the instruction he now argues should have been given was substantially covered by one given by the court of its own motion.

■ At different stages of the case appellant presented and the trial court denied two separate motions for new trial, and at the time of denial of each motion appellant appealed from the order. The sole ground urged for reversal of the order denying his first motion relates to the question of the sufficiency of the evidence; and that question has already been discussed and determined on the appeal from the judgment. The second motion was based on an additional ground, to wit, newly discovered evidence, and in denying the motion the trial court held, first, that the law did not provide for consecutive motions for a new trial, and that since appellant had made one motion therefor which, prior to the presentation of the second motion, had been denied, and an appeal had been taken from the order of denial, he had exhausted his remedy, and the trial court was without legal authority to entertain a second motion; secondly, that in any event, no sufficient showing had been made that the evidence upon which his second motion was based was newly discovered evidence.

The trial court's ruling is fully supported by the law and the facts. The record shows the following: The verdict was rendered on September 1, 1942, and on September 4, defendant moved for a new trial, urging as grounds therefor insufficiency of the evidence and that there was a failure to prove venue. The motion was denied, and appellant gave immediate notice of appeal from the order, requested a transcript, and an order was made granting the request. Also, at the same time, appellant made application for probation, and the cause was continued from week to week, at his request, until October 2, 1942, at which time he presented his second motion for new trial based on the ground of newly discovered evidence. The motion was denied and he then withdrew his application for probation, the reason for the withdrawal being that he had been previously convicted in another state on a charge of burglary. Thereupon sentence was pronounced, and he appealed from the judgment of conviction and the order denying his second motion for new trial.

At the outset of the hearing of the second motion for new trial the prosecution objected to the presentation thereof, and in response to the objection the trial court expressed doubts as to the right of a defendant to make a second motion for a new trial or the authority of a trial court to entertain such; but the court stated that subject to the objection appellant would be permitted to present he motion. Thereupon the motion was

heard, and at the conclusion of the hearing the trial court denied the same on the grounds above mentioned, namely, that appellant had exhausted his remedy by a former motion, which was denied; and that no sufficient showing had been made that the evidence upon which the second motion was based was newly discovered evidence.

As to the first ground of denial, the case of *People* v. *Martin*, 199 Cal. 240 [248 P. 908], is directly in point. There as here a motion for new trial was made and denied, and the defendant gave immediate notice of appeal from the order; whereupon the court continued the cause for pronouncement of judgment and to entertain an application for probation. At the time set therefor a second motion for new trial was made on an additional ground, supported by affidavits, and the motion was granted. The People appealed, and the order was reversed, the court saying: "There is no statutory or other authority for the presentation or consideration of a second motion for a new trial under the circumstances here shown. There was no showing that the order denying the first motion was entered prematurely or by inadvertence, as was disclosed in *Robson* v. *Superior Court,* 171 Cal. 588 [154 P. 8], nor was there any application for relief or showing pursuant to section 473, Code of Civil Procedure, and at the time the second motion was made the time for pronouncement of judgment had not expired. If such a proceeding were sanctioned the results pointed out in *Coombs* v. *Hibberd,* 43 Cal. 452, would be apparent and the time limited within which a motion for a new trial might be made would be enlarged and new trial proceedings would become interminable. (See, also, *People* v. *Center,* 61 Cal. 191; *Odd Fellows Sav. Bank* v. *Deuprey,* 66 Cal. 168 [4 P. 1173; *Dorland* v. *Cunningham,* 66 Cal. 484 [6 P. 135] ; *Carpenter* v. *Superior Court,* 75 Cal. 596 [19 P. 174] ; *Holtum* v. *Greif,* 144 Cal. 521 [78 P. 11].) While the cases cited involved new trial proceedings in civil cases no authority has been noted which prescribes a different rule in criminal cases. Furthermore, an order denying a motion for a new trial in a criminal case is an appealable order (Pen. Code, sec. 1237). The appeal from the order denying the first motion was announced in open court by the defendants immediately after the denial of the motion and prior to the pronouncement of judgment (Pen. Code, sec. 1182). Assuming that the said appeal was not premature it would follow that said new trial proceedings were removed from the jurisdiction of the trial court by the taking of the appeal. This would afford an additional reason why

the court could not thereafter, under the facts here shown, reconsider the same or a similar motion and enter an order thereon.''

In a later case, *People* v. *Paysen,* 123 Cal.App. 396 [11 P.2d 431], the court said: ''. . . it is well settled in this state that when the trial court has made its order denying a motion for a new trial 'the right to move for a new trial had thus been exercised and exhausted.' (*People* v. *Ingersoll,* 21 Cal.App. 763 [132 P. 1052]. See, also, *People* v. *Martin,* 199 Cal. 240 [248 P. 908]; *People* v. *Prudencio,* 93 Cal.App. 241 [269 P. 698]; *People* v. *Walker,* 142 Cal. 90 [75 P. 658]; *People* v. *Center,* 61 Cal. 191; *People* v. *Lum,* 61 Cal. 538; *People* v. *Fice,* 97 Cal. 459 [32 P. 531]; *People* v. *Wessel,* 98 Cal. 352 [33 P. 216].) Once a motion for a new trial has been ruled upon in a criminal case and an order made either granting or denying such application, the only remedy for the party deeming himself aggrieved is by an appeal from such order, for the court is without authority to entertain a subsequent motion the object of which is to change or vacate its former order.''

With respect to the second ground of denial, it has often been declared in the decisions that a motion for a new trial based upon a claim of newly discovered evidence is to be looked upon by the courts with distrust and disfavor. (*People* v. *Yeager,* 194 Cal. 452 [229 P. 40]; *People* v. *Oliver,* 60 Cal.App. 693 [214 P. 272]; 8 Cal.Jur. p. 427.) For that reason it is held that in determining such a motion an enlarged discretionary power is committed to a trial court, and that its ruling will not be disturbed on appeal unless it is a case manifesting a clear and unmistakable abuse of discretion. (8 Cal.Jur. p. 442). Furthermore it is well settled that such a motion should be denied where it appears that prior to or during the trial the evidence claimed to be newly discovered was known to the defendant and was then obtainable by him (8 Cal.Jur. p. 428; see also cases cited in 4 Cal. Jur. 10-Yr. Supp. p. 752); and this is so even though the facts sought to be established thereby would constitute a good defense to the charge. (*People* v. *Kelly,* 32 Cal.App.2d 624 [90 P.2d 605].)

In the present case the affidavits made by appellant and his counsel, upon which the motion was based, were sworn to on October 1, 1942, the day prior to the date set for the pronouncement of sentence. Appellant's affidavit was to the effect that he had ''discovered'' that Gayle Coronado ''was in truth and in fact not his wife''; that such ''discovery'' was made

for the first time subsequent to the trial and the denial of his first motion for new trial; and that on September 30, 1942, she had secured a decree annulling their marriage, wherein it was declared that said marriage was void from the beginning. In the affidavit made by appellant's counsel it was merely averred that on September 30, 1942, he learned for the first time that the marriage was void, when he was informed by Gayle Coronado's attorney that a decree of annulment had on that day been granted. However, it appears from the proceedings had at the hearing of the motion on October 2, 1942, including the statements and admissions made by appellant in open court at that time, that prior to the commencement of the trial and throughout its progress appellant had personal knowledge of all the facts and circumstances upon which he was basing his claim that Gayle Coronado was not his wife, and that at all times prior to the commencement of the trial and during its progress the evidence relating to those facts and circumstances was available to him and could have been produced at the trial had he chosen to do so. It is apparent from the nature of the evidence that had he done so it would have tended to show that he was a bigamist. However, admittedly he made no attempt to introduce any evidence of any kind relating to his marital status, the only excuse offered by him for not having done so being that he did not ''realize the legal significance of that knowledge.'' Even assuming that to be true, failure to realize the materiality of evidence does not bring it within the category of ''newly discovered'' evidence. A similar situation was presented in *People* v. *Kelly, supra,* and the court there said: ''The facts narrated in the affidavit do not constitute new evidence which would entitle the defendant to a new trial. To entitle a party to a new trial on the ground of newly discovered evidence, it must appear that the evidence and not merely its materiality be newly discovered.'' (Citing cases.)

Appellant seems to contend that prior to the rendition of the decree of annulment it was legally impossible for him to establish that Gayle Coronado was not his wife. But such is not the law, for if as he claimed she was not his wife because at the time of his marriage to her he had a wife living from whom he had not been divorced, the invalidity of his marriage to Gayle could have been established by evidence showing those facts, regardless of whether a decree of annulment was ever obtained. (See *People* v. *Duncan, supra,* in commenting on *People* v. *Mock Yick Gar,* 14 Cal.App. 334 [111 P. 1039].) In

other words, it appears from the proceedings had at the time of the hearing of the second motion that several months after his marriage to Gayle his lawful wife obtained a divorce from him in the court in which he was then being tried; and that he not only had actual knowledge of that divorce proceeding, but actively participated therein by filing certain waivers and stipulations. Obviously, therefore, he could have established the illegality of his marriage to Gayle at the trial of the present action by his own testimony or by introducing in evidence the decree of divorce, or both. ■■■ Stated another way, it is the fact of the existence of the undissolved first marriage at the time the second marriage is contracted that renders the second marriage void, whether or not it is afterwards so judicially decreed; and while a decree of annulment is in itself prima facie evidence that the second marriage is void, and relieves a party claiming under it from showing the facts upon which it is based, the failure to obtain such a decree does not have any effect whatever upon the validity of the second marriage. It is nevertheless void from the beginning, and the decree of annulment is merely a judicial declaration to that effect.

■■■ Here, as stated, appellant at all times prior to the commencement of the trial had personal knowledge of the facts and conditions relating to his marital status, but instead of taking advantage of them he admitted throughout the trial that Gayle Coronado was his wife, and never intimated otherwise. Therefore, having submitted the question of his guilt to the jury without disclosing the evidence relating to his marital status, the law will not permit him after the verdict has been rendered against him to have the verdict set aside so as to afford him a second opportunity to submit such evidence to a jury.

In any event, it is unimportant so far as we are here concerned whether it be held that the evidence relied upon by appellant as the basis for the second motion was or was not newly discovered evidence, for the reason that under the authorities above cited the trial court was without jurisdiction to entertain the second motion. Furthermore the statute does not provide for more than one appeal from the action of a trial court denying a new trial; consequently, appellant having appealed from the order denying his first motion, he was not entitled to an appeal from the order denying his second motion.

For the reasons stated it is our conclusion that the appeal from the order denying the second motion for new trial

should be dismissed, and that the judgment of conviction and the order denying the first motion for new trial should be affirmed. It is so ordered.

Ward, J., concurred.

PETERS, P. J.—I concur and dissent.

This case presents a most peculiar situation. The appellant is charged with "placing" or "permitting the placing" of his "wife" in a house of prostitution. The evidence produced at the trial supports the implied finding of the jury that appellant committed the offense charged, in the sense that he permitted the placing in such a house of the woman to whom he had been married, and with whom he was living. But, after verdict, and before sentence, a judicial annulment of respondent's marriage to that woman was secured on the ground that he was lawfully married to another when he married the woman in question. The first wife had secured a divorce from defendant subsequent to his second marriage. The record shows that the same judge who presided at the criminal trial granted the annulment, and, further, that the prosecuting officials knew of the pending annulment proceedings. No contention is made, nor is it even suggested, that the annulment was secured improperly. In other words, had the facts upon which the annulment was secured been disclosed at the criminal trial, appellant could not have been convicted lawfully of the offense of which he now stands convicted. We now know, as a matter of law, by virtue of the unchallenged annulment decree, that appellant did not commit the offense of which he stands convicted.

I agree that, under the circumstances here disclosed, the second motion for a new trial was improper. The trial court had exhausted its jurisdiction over such a motion when it ruled on the first such motion and an appeal was taken therefrom. For that reason, the appeal from the second order denying the motion must be dismissed.

So far, I agree with the majority opinion. But that opinion does not stop there. It goes on to hold that, on its merits, the second motion did not present a proper case for granting the motion for a new trial on the ground of newly discovered evidence. That holding, in my opinion, is unsound. While it is true that litigants should not be permitted to sit back and allow a court to go on with the trial and to take their chances

with a jury, and then, after they have lost that gamble come forward with the claim of newly discovered evidence to secure a new trial when they knew of the existence of such evidence during their trial, and while I agree that, normally, knowledge of the existence of facts without realization of their legal significance is sufficient ground to deny the motion, this is not an ordinary case. The present case is not one where the facts, if relied upon during the trial, would depend for their effectiveness on the credibility of witnesses. Here, it has been conclusively established by a judicial decree as a matter of law that appellant is not guilty of the offense charged. Under such circumstances, where the alleged "newly" discovered evidence is of such a nature that as a matter of law it demonstrates the impropriety of the conviction, it is my opinion that if a proper motion for a new trial is made, it should be granted. If this is not the law, it means that the trial court, while still possessing jurisdiction, is impotent to correct a situation where it knows, as a matter of law, that a convicted defendant is innocent of the charges upon which he has been convicted. I am not willing to agree that trial courts lack the power to correct such an injustice.

The difficulty in the instant case is, that the trial court had no jurisdiction to consider the second motion for a new trial, and this court cannot consider matters which appear only in proceedings on a void motion. It is not even intimated that the prosecuting officials connived in preventing the production of the evidence. Orderly administration of criminal procedure requires the defendant to urge his defenses, if any, in the manner provided by law. Not having done so, redress for any miscarriage of justice, if any occurred, must be had from the executive under his pardoning power.