[Crim. No. 2793.   First Dist., Div. Two.   Sept. 25, 1952.]

THE PEOPLE, Respondent, v. JAMES C. COLE, Appellant.

Davis & Colvin and Reynold H. Colvin for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General for Respondent.

DOOLING, J.—Defendant was convicted on two counts of possession and one count of transportation of marijuana. The two counts of possession were couched in identical language and each charged that defendant "on or about the 9th day of March nineteen hundred and fifty-one . . . did wilfully, unlawfully and feloniously have in his possession a quantity of marijuana . . ." ██ The charging in identical language of apparently identical offenses, while perhaps permissible under the code which allows each offense to be pleaded in the language of the statute (Pen. Code, § 952), is confusing since it is impossible to determine as between the counts upon what facts the jury relied for the verdict of guilty on either count. That it was confusing to the jury as well is demonstrated by the fact, hereafter discussed, that the jury after retiring returned to court and requested a clarification as to what offense was intended to be included in each count. No objection to this uncertainty created by the form of the two counts was made so far as appears from the record but where two similar offenses are charged in one indictment to have been committed at the same time it would appear to be much better practice to include sufficient in the indictment or information to clearly differentiate the facts relied upon to constitute the separate offenses. Whether or not this would be required to satisfy Penal Code, section 950, subdivision 2, which requires "a statement of the acts constituting the offense . . . in such manner as to enable a person of common understanding to know what is intended" need not be decided since the defendant went to trial on the information as framed without objection. We simply point out this uncertainty because if the jury, for example, had found defendant guilty on one such count and not guilty on the other it would be impossible for an appellate court to determine the factual basis of the jury's verdict on either count. The simplification of criminal pleadings was a necessary and useful form but district attorneys should not carry such simplification to the point where uncertainties of the character found in this case are created. The charge of transportation was likewise alleged to have occurred on or about March 9, 1951.

The evidence shows that on March 9, 1951, certain officers approached an automobile parked in front of defendant's residence. The defendant was seated in this car. He told the officers that it was his car and that he was the only

person who drove it. A search of the car discovered in the luggage container a kit containing barber's tools in which was a single weedy flake about the size of a fingernail. Scattered on the floor in front of the back seat of the automobile and under the back seat a total of 12 seeds were found. Under the front seat was found an apparently empty tobacco can. From this can a trace of material was scraped. This scraping, the 12 seeds and the single flake were examined by a chemist who testified that they were all marijuana. Defendant disclaimed knowledge of the presence of this material in his car.

On a shelf in an open compartment outside defendant's residence were found a paper bag and two tobacco cans containing a large quantity of loose marijuana and marijuana cigarettes. Defendant at first remained silent on being questioned about this, but later when his wife was being asked about it he said: "She knows nothing about it. They are mine." Later he made a similar admission. When asked by another officer "if the stuff was his" (referring to the marijuana found in the compartment outside his residence) the defendant answered: "Yes."

After the case went to the jury, the jurors returned into court and asked to have the judge clarify the two counts charging possession. The judge then instructed the jury as follows:

"The Court: Now neither count, as you will observe, refers to any particular evidence specifically as it was presented to you here from the witness stand through the testimony of the People's witnesses. Count 1 may apply to either quantity, either exhibit of marijuana, likewise, Count 2 may apply to either quantity or exhibit of marijuana, and quantity means any substance, small or great, infinitesimal or otherwise, which has been identified as marijuana, whether it is from the leaf of the marijuana or whether it is in the form of the seed of marijuana, it is all marijuana.

"There is testimony in the record indicating that marijuana was found on a ledge under the stairway of the premises occupied in part by the defendant and his family; that consisted of bulk marijuana, marijuana seeds, marijuana cigarettes, eight marijuana cigarettes and a butt of a marijuana cigarette. There is also testimony that marijuana was found in the automobile of the defendant, in the trunk compartment, consisting of a flake in the pouch or bag, the bag itself being People's Exhibit 1 in evidence. There was testi-

mony, also, that marijuana seeds were found in the car, and there is also testimony that marijuana was found in a can, which is designated People's Exhibit 7 in evidence, that there was a particle of marijuana or particles of marijuana in that can.

"Now as to those exhibits of marijuana, the last three referred to, the last four, rather, the flake in the pouch found in the trunk compartment of the car, the seeds found under the rear seat, the seeds found in back of the front seat on the floor of the car where the carpeting material was, and the can, as I recall it, in the front part of the car, those substances would apply to one count of possession, and would have nothing to do with the charge of possession involving the marijuana that was found on the ledge in the premises wherein the defendant lived. And that marijuana that was found on the ledge constituting the building or premises, a part of which was occupied by the defendant, that would come under either one of the two counts charging possession, but you mustn't confuse the charge of possession of marijuana, whether leaf, flake, seed or particles of marijuana as, for instance, found in the can, designated People's 7 in evidence, with the marijuana found on the ledge, where the gas meter was, or water meter, whatever it was; they are two separate and distinct charges of possession; in other words, there was no testimony that People's Exhibit 6 in evidence, a big bag, containing a smaller bag, the smaller bag containing, I think, two and one-quarter ounces of marijuana, eight cigarettes, and a butt of cigarette, cigarette wrapping papers, and the two cans of marijuana, they are not to be associated with the marijuana allegedly found in the automobile."

It is clear from this instruction and from the entire course of the trial that the charge of transportation and one of the counts charging possession were both based on the single flake, 12 seeds and trace from the can found in defendant's automobile, and that the verdict of guilty of transportation and one verdict of guilty of possession referred to this material. We are satisfied under the doctrine of *People* v. *Mandell*, 90 Cal.App.2d 93 [202 P.2d 348] and *People* v. *Krupa*, 64 Cal.App.2d 592 [149 P.2d 416] that any possession of this material must be held a mere incident to its transportation and that one offense was necessarily included in the other and both convictions cannot stand. This is mentioned only because of its importance in case of a second trial since

we are satisfied that the judgments on the transportation count and on one count of possession should both be reversed for the reasons hereinafter stated.

The court instructed the jury: "that while there must be a unity of act and intent in every public offense, it is not necessary that the evidence show that the defendant knew that the object or objects which he possessed *were narcotics* or were prohibited by law, so long as . . . he had knowledge of the existence and location of such object or objects and intended to maintain physical control thereof."

The italicized words were erroneous as we understand the law. Under this instruction if the defendant possessed marijuana, honestly believing it to be an innocuous substance such as alfalfa or tobacco he would still be guilty. While a specific intent to violate the law is not an ingredient of the crime of possession of a narcotic, "a knowledge that *the facts exist* which bring the act within the provisions of this code" is necessary. (*People* v. *Gory,* 28 Cal.2d 450, 456 [170 P.2d 433].) One of the facts of which a defendant must have knowledge is that the article is a narcotic, because that is one of the facts, indeed the essential fact, "which bring(s) the act within the provisions of this code." To instruct as the court did in this case that it is not necessary "that the defendant knew that the object or objects which he possessed were narcotics" is to authorize the conviction of a defendant who possessed marijuana in the honest belief that it was not marijuana. If that is the law then if I am given marijuana cigarettes, in a package of one of the standard brands of cigarettes made of tobacco, and retain it in my possession in the honest and innocent belief that it is a package of that brand of cigarettes I am nonetheless guilty of a felony, or if I cut a weed from the roadside which is in fact marijuana and use it as a part of a floral decoration in my home not knowing its narcotic character I am equally guilty It is axiomatic that all laws must be reasonably construed and such a construction would so clearly pass the bounds of reason as to be unthinkable.

The defendant, although represented by counsel, insisted on cross-examining the prosecution's witnesses himself. In an attempt to impeach one of the officers he was trying to establish inconsistencies in his testimony when the following occurred:

"The Defendant: Q. Mr. Noels, you have stated that you asked those questions back in the house. Now, may I ask

which is the truth, which is—this is contradictory to the testimony which you have given here.

"The Court: Now, just a moment, sir. Strike the argument of the defendant. You are not to stand here and argue with any witness, Mr. Cole. You are——

"The Defendant: I'm merely asking the questions, sir.

"The Court: Just a moment, sir. You are not to stand here and arrogate to yourself the function of the jury and say that this witness has fabricated, has committed perjury; that is what you suggested.

"The Defendant: I can prove it.

"The Court: For that, I will hold you in contempt, sir, and will sentence you at the conclusion of this trial. You will prove nothing.

"Make a note of it, that he can prove this witness committed perjury. Mr. Hennessy, I am now going to suggest to you that you counsel with your client.

"Mr. Hennessy: Yes, your Honor.

"The Court: I am going to ask now that you counsel with your client who is guilty of contumacious conduct before this court and before this jury.

"Mr. Hennessy: Well, he understood that to be the law.

"The Court: If necessary, I will sentence him now and continue this case.

"Mr. Hennessy: Now, if the Court please, he was under the impression he could ask that question. It has been done in court on a good many occasions.

"The Court: He has made the statement, 'I can prove it.' You are the attorney of record in this case, Mr. Hennessy, and I very respectfully suggest that you counsel your client to remain within the bounds of propriety. He has been given the right, his constitutional right to act as his own counsel in conjunction with yourself as his advisor.

"Mr. Hennessy: Well——

"The Court: Just a moment, sir. He is now trespassing upon the propriety of court room procedure; he has made an unwarranted attack upon this witness by saying, 'I can prove it,' responsive to my observation. He is not to stand here and charge this witness with perjury. Now, certainly, out of your vast experience as a trial lawyer, a man whom we all respect as an officer of this court, Mr. Hennessy, you are now in a position, I am sure, to properly counsel your client.

"Mr. Hennessy: I will ask your Honor to withdraw the commitment because——

"The Court: I have made no commitment, I have made an adjudication and that stands.

"Mr. Hennessy: I know—about sentencing him for contempt, because he is acting under a misinterpretation of the law through ignorance.

"The Court: I will defer sentence until the conclusion of this trial."

It has frequently been held that even an attorney who is proceeding in good faith to urge on the court an erroneous view of the law cannot be held in contempt for so doing. (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86-87 [206 P. 2d 1081]; *Bennett* v. *Superior Court,* 99 Cal.App.2d 585, 595 [222 P.2d 276]; *Bennett* v. *Superior Court,* 73 Cal.App.2d 203, 217-218 [166 P.2d 318].) Here where a layman was attempting, perhaps inadvisedly, to represent himself the same rule should apply with somewhat more latitude to be allowed to him because of his ignorance of the refinements of trial procedure. The defendant was attempting, somewhat awkwardly, to impeach the witness by what he believed were prior inconsistent statements. He framed his question in a layman's fashion inartificially from a lawyer's viewpoint. The judge in attempting to correct the form of his question for the first time injected the word "perjury" into the discussion and the defendant was told by the judge that he would not permit the defendant to say that the witness had committed perjury, something that the defendant had certainly not in terms up to that moment suggested. In natural response to this admonition the defendant then stated: "I can prove it."

We can find nothing contumacious in this statement of the defendant. The purpose of cross-examining a witness about alleged prior inconsistent statements is to develop the fact that he has at different times given different versions of the same transaction. Where he has done so it becomes obvious that one version or the other cannot be correct, or in the language of the defendant's question which precipitated the discussion leading to the announced finding of contempt one of the contradictory versions cannot be "the truth." Whether the incorrect version is inadvertent or deliberate then becomes a question for the jury. If the jury draws the inference that it was deliberate the jury has in effect found that the witness has committed perjury. We cannot say that this layman under the circumstances was acting contumaciously or other than in good faith in giving the answer that he did to the

judge's admonition. Being told that he would not be permitted to make a charge of perjury (which up to that moment he had not explicitly done) what more natural than his assurance to the court that his cross-examination of the witness would develop just that?

By his unjustified finding of contempt; by the statement to the defendant; "You will prove nothing"; by the entire discussion before the jury which is quoted above, the judge not only seriously discredited the defendant in the jury's eyes but threw his judicial weight onto the side of the prosecution in the presence of the jury by at least implicitly vouching for the credibility of the prosecution's witness.

Our courts have on many occasions pointed out the duty of a trial judge before a jury, both in criminal and civil cases, not to do anything which would lead the jury to believe that the judge was of the opinion that one party or the other should receive the verdict, nor to appear to throw his judicial weight on one side or the other. (*People* v. *Mahoney,* 201 Cal. 618, 626-627 [258 P. 607]; *Sanguinetti* v. *Moore Dry Dock Co.,* 36 Cal.2d 812, 822 [228 P.2d 557]; *People* v. *Byrd,* 88 Cal.App.2d 188, 191 [198 P.2d 561]; *People* v. *Zammora,* 66 Cal.App.2d 166, 209 [152 P.2d 180]; *People* v. *Frank,* 71 Cal.App. 575, 581 [236 P. 189].) These cases reiterate the fact that jurors are eager to find and quick to follow any supposed hint of the judge as to how they should decide the case.

The question always is, where such instances occur, whether the conduct of the judge under the particular facts has seriously prejudiced the litigant with the jury. The evidence of the defendant's possession of the considerable quantity of marijuana found in the compartment near defendant's residence was strong and convincing. Two officers testified that defendant admitted to them at separate times that this marijuana was his and the defendant did not take the stand to deny this. We are satisfied that the jury's verdict would have been the same on this count if the incident above recited had not occurred. In view of all the circumstances, including the fact that it is perfectly clear from the evidence that defendant knew that the officers were searching for marijuana, his admissions without qualification that this particular marijuana was his and his failure to take the stand in his own defense, we cannot find that as to this marijuana the error in the instruction above noted was prejudicial. The fact that the compartment in which this mari-

juana was found was open to others who might have placed it there loses significance in the face of defendant's admissions.

The single flake in the barber's kit, the 12 scattered seeds and the trace scraped from an apparently empty can all found in the automobile stand on a very different ground. Defendant made no admissions concerning this material and disclaimed knowledge of its presence in his car. It strains credulity to believe that he knowingly left a single flake in his barber's kit or 12 scattered seeds in his car or a trace in an apparently empty tobacco can or knowingly transported these tiny quantities. On oral argument the attorney for the People suggested that these small quantities were probably inadvertently overlooked by the defendant and their presence in the car would support a finding that he had recently possessed and transported a larger quantity of marijuana of which these were the scattered and forgotten vestiges. The instruction explaining the two counts of possession to the jury and the whole tenor of the trial show that the case did not go to the jury on this theory, but on the theory that defendant knowingly possessed and transported the scattered and insignificant fragments found in the car. The patent improbability of his having knowingly done so makes it clear that the errors above discussed were prejudicial as to these two counts.

We find no merit in the claim that the court unduly interfered with defendant's cross-examination of the prosecution's witnesses. A reading of the transcript indicates that with the single exception of the instance in which the court found the witness in contempt the judge did not go beyond reasonable bounds in clarifying defendant's questions. Nor do we find prejudicial error in the district attorney's speaking of defendant as ''trafficking'' in marijuana or stating that he knew why defendant did not take the stand.

The judgment of guilty of possession under count 1 is affirmed. The judgments of guilty on counts 2 and 3 are reversed and the case on those counts remanded for a new trial.

Goodell, J., concurred.

Nourse, P. J., concurred in the judgment.

Appellant's and respondent's petitions for a hearing by the Supreme Court were denied October 23, 1952.