[Civ. No. 23634.   Second Dist., Div. Three.   Sept. 15, 1959.]

BILLY M. BRODSKY, Appellant, v. CALIFORNIA STATE BOARD OF PHARMACY, Respondent.

Walter H. Young for Appellant.

Stanley Mosk, Attorney General, and George M. Goffin, Deputy Attorney General, for Respondent.

VALLÉE, J.—The State Board of Pharmacy suspended petitioner's license to practice as a licentiate in pharmacy for 30 days, stayed execution of the order, and placed him on probation for one year on specified conditions. The appeal is from a judgment denying a writ of mandate to compel the board to annul its order.

The accusation against petitioner charged a violation of section 4385 of the Business and Professions Code[1] which provides that any person who permits the compounding of prescriptions or the selling of drugs in his pharmacy except by a registered pharmacist is guilty of a misdemeanor, in that on November 27, 1956, he permitted a person who was not a registered pharmacist to compound and sell a prescription; and a violation of section 4386 which provides that any proprietor of a pharmacy who fails or neglects to place in charge of such pharmacy a registered pharmacist is guilty of a misdemeanor, in that as a proprietor of a pharmacy he neglected to place in charge of the pharmacy a registered pharmacist at a time when he was not in the pharmacy.

The hearing officer who received the evidence found: 1. On November 27, 1956, Ray Bascom entered the pharmacy owned by petitioner with a label containing a prescription originally filled at Owl Drug, and presented the label to Louis

---

[1]All section references are to the Business and Professions Code unless otherwise indicated.

Resnick. 2. Resnick was at no time licensed in any capacity by the board. 3. Resnick refilled the prescription and delivered it to Bascom. 4. At the same time Resnick also sold to Bascom two other items which could lawfully be sold only by a registered pharmacist. 5. At the time Bascom entered the pharmacy there was no registered pharmacist on duty. 6. Petitioner had opened the pharmacy in the morning and had remained on duty throughout the day until about 6:45 p. m., at which time he left the pharmacy, crossed the street to a drive-in to obtain some food, and returned to the pharmacy within 45 minutes. 7. Petitioner usually has only one pharmacist on duty.

The hearing officer further found: 1. Petitioner has instructed and received written acknowledgment from all of his employees that they were not to sell any items which the law required a registered pharmacist to sell, and that when the registered pharmacist went across the street for the purpose of obtaining food the employees were to wave to petitioner or the pharmacist to have the pharmacist return to the pharmacy to handle any matter that only a registered pharmacist could lawfully handle. 2. Resnick violated the instructions of petitioner in making the sale to Bascom. 3. Petitioner has not suffered any prior disciplinary action by the board and has been licensed about 30 years.

The hearing officer concluded petitioner had violated sections 4385 and 4386 and recommended suspension of the license with a stay and probation. The findings and recommendation were adopted by the board as its decision. Thereafter the superior court denied a writ of mandate after reviewing the record before it.

On November 27, 1956, Ray Bascom, an investigator for the board, entered petitioner's pharmacy. Petitioner was not there. Resnick, petitioner's employee, who was not a registered pharmacist, was alone in the pharmacy. Bascom presented a prescription label to Resnick and requested him to fill it. Resnick telephoned the pharmacy where the prescription had first been filled to get the details and filled the prescription. It called for Equanil[2] or Miltown.[3] Resnick handed a bottle containing the prescription and bearing a label to Bascom.

About a half hour later Bascom reentered the pharmacy

[2]Equanil: a drug; ataractic agent; skeletal muscle relaxant.
[3]Miltown: a drug; tranquilizer; muscle relaxant.

accompanied by Douglas, an inspector for the board. Douglas told Resnick he had illegally filled the prescription and asked him where petitioner was. Resnick said he was not in the pharmacy. Resnick was then asked to telephone petitioner and have him return to the pharmacy. Resnick made a telephone call. About 15 minutes after the call, petitioner came into the pharmacy. Douglas told petitioner he had received a prescription filled by Resnick and had purchased two other restricted class B poisons.[4]

Petitioner's first point is that neither the evidence nor the findings of fact of the board support its conclusion that he permitted the selling of drugs by an unregistered pharmacist. He states the question thus: ''Has a person *permitted* the sale of drugs in his pharmacy, by an unregistered pharmacist, so as to violate Section 4385 of the Business and Professions Code, when such person has not expressly or impliedly authorized such sale, and when such person has *no* knowledge of the making of such sale, and when such person has previously given *specific* instructions to his employee not to make such sales and has taken precautions to prevent the sale?'' He argues that the word ''permit'' as used in section 4385 connotes knowingly allowing a thing to happen; it means that, when such person has present knowledge of such a sale being made, or when such person knows or anticipates that such a sale is likely to be made, such person allows or tolerates such sale to be made, and there was no evidence he knowingly allowed Resnick to sell the drugs to Bascom.

■ The verb ''permit'' is derived from the Latin word ''permittere'' which means to concede, to give leave, to grant. It is a word of considerable elasticity, and lacks clear-cut and precise definiteness. ■ It is not a technical word, and in English it has two significations, the first being where the mind consents to the act, the second where the mind does not affirmatively agree to the act, but, having the right and the means to interfere to prevent it from happening, fails to do so. In the first sense it means affirmative action, an authorization, being properly used with reference to permanent authority, and implying knowledge, intention, and consent. In the second sense it means negative action, something less than consent, implying no affirmative act and involving no intent, but being mere passivity; abstaining from preventive action. (70 C.J.S. 565.)

---

[4]Ammoniated mercury ointment and tincture of iodine.

█ The authorities are not harmonious in their construction of the verb "permit." Some say it implies knowledge, coupled with the duty and power to prevent the particular act or omission; others say its signification is where the mind does not affirmatively agree to the act, but, having the right and the means to interfere to prevent it from happening, fails to do so. In other words, its exact significance varies with the context of its use.

*People* v. *Conness,* 150 Cal. 114 [88 P. 821], was a prosecution in which the information charged that defendant did "permit" his wife to remain in a house of prostitution. The statute provided that any man who by any means permits the placing or leaving of his wife in a house of prostitution, or allows or permits his wife to remain therein, was guilty of a felony. Defining the words "allow" or "permit" as used in the statute, the court stated (p. 121):

"The word 'allow' here means more than mere 'abstinence from prevention,' as the court below defined it in an instruction given to the jury. It has almost the identical meaning of the word 'permit', also used in the statute. It implies some sort of assent on the part of the husband. There must be some active wish, or at least willingness, in his mind, after he has knowledge of her presence in the house, that she should continue there; something more than mere indifference to her whereabouts or passive sufferance in a case where the circumstances do not call upon him to interfere with her conduct. Where he does not, directly or indirectly, place or leave her in the house, or connive at, consent to, or permit of her going there (using the word 'permit' in the same sense which we attribute to the word 'allow'), he must, to some extent, be an accomplice in her remaining there, after he has knowledge of the fact." *People* v. *Duncan,* 22 Cal. App. 430 [134 P. 797], is to the same effect. In the Duncan case the court approved the instruction set out in the margin.[5]

---

[5] "'The words 'allow' or 'permit' as used in the statute defining the offense alleged in the information imply some sort of assent on the part of the husband to his wife's remaining in a house of prostitution. There must be some active wish or at least willingness in his mind after he has knowledge of her presence in the house that she should continue there. To prove a defendant guilty of violating such statute, it is not necessary to show that he actually placed his wife in a house of prostitution. It is only necessary to prove that his wife was in a house of prostitution, that he had knowledge of the fact that it was a house of prostitution and of the fact that his wife was in said house, and that after such husband had such knowledge he allowed or permitted her to remain therein.''

In *People* v. *Forbath*, 5 Cal.App.2d Supp. 767 [42 P.2d 108], the court considered an ordinance which declared "it shall be unlawful for any person . . . to allow, permit or suffer any vehicle registered in his . . . name as registered owner thereof, to stop, stand or park . . . upon . . . any street. . . ." The court stated (p 769):

"While their exact significance varies somewhat with the context of their use, we find that as definitive of a person's criminal conduct the words 'allow' (*People* v. *Conness*, 150 Cal. 114, 121 [88 P. 821]), 'permit' (*Cramer* v. *Jenkins*, 82 Cal.App. 269, 276 [255 P. 877, 256 P. 444]), and 'suffer' (60 C.J. 990; Black's Law Dict., 3d ed., p. 1675), all imply knowledge of, coupled with a duty and power to prevent, the particular act or omission, the allowance, permittance or sufferance of which, constitutes the offense."

*State* v. *Robinson*, 55 Minn. 169 [56 N.W. 594], construed a statute similar to section 4385. The action was to recover two penalties imposed by the statute. In the trial court, the plaintiff had judgment; the defendant appealed. The court stated (56 N.W. 594):

"As found by the court below, defendant had in his employment in his drug store, to clean up the store, sell cigars, soda water, patent medicines, and notions, one Fremstad, who was not a registered pharmacist or assistant. When he employed Fremstad he instructed him that he must not sell any drugs or poisons, or prepare any prescriptions. Defendant attended the business at his store, and was there during the greater part of the time, with short absences. During two of these absences Fremstad made the sales which are charged against defendant as violations of section 12 by him. It is not found that he actually knew of or directly authorized the sales. But it is claimed that he permitted the sales within the meaning of the section; that within its meaning the owner of a drug store permits on the part of his employes what he does not prevent. As always used, the word 'permit' includes the element of assent. When used in a statute to describe an action made penal it must be held to include that element, unless there be something in the context clearly indicating the contrary. It is, of course, necessary for druggists to employ in and about their stores persons who are not registered pharmacists or assistants. The statute (section 2 and 4) contemplates that they may have such for the purpose of learning the business. It would be hard upon the owners of such stores to make them liable penally for the acts of

such persons done without their knowledge, and contrary to their instructions. There is nothing in the statute showing an intent to go so far as that. Order reversed.''

On the other hand, in *Dorris* v. *McKamy*, 40 Cal.App. 267 [180 P. 645], an accusation against a city marshal, brought to remove him from office under former Penal Code section 772, alleged he ''permits'' women to occupy ''cribs.'' The court stated (p. 274):

''The word 'permit' is a word of considerable elasticity; it lacks clearcut and precise definiteness. As defined by Webster and others, 'permit' implies no affirmative act. It involves no intent. It is mere passivity, abstaining from preventative action. (*In re Thomas*, 103 F. 272, 274.)''

And in *Markus* v. *Justice's Court*, 117 Cal.App.2d 391 [255 P.2d 883], a Mendocino County ordinance provided (p. 394): '' 'It shall be unlawful and a misdemeanor for any person to cause or permit, or allow any dog or dogs, owned, harbored, controlled or kept by him, to roam or run or stray away from the premises where the same is or are owned, harbored or kept, at any time, except in the custody and control of the owner or some responsible person, thereunto by the owner duly authorized.' '' (The court stated (p. 398):

''The use in the pleadings of the word 'allow' implies the charge that defendant was sufficiently in control, ownership or possession of the dog as to be chargeable with regulation of his conduct in accordance with the ordinance. The word is synonymous with 'permit' (Webster's Int. Dict.), and both words when used in conjunction with a statute charging a duty to the owner of a dog to regulate his activities connote positive duty, failure to perform which will violate the ordinance.''

*State Board of Pharmacy* v. *Matthews*, 52 Misc. 492 [102 N.Y.S. 507], aff. 122 App.Div. 889 [106 N.Y.S. 1146], aff. by opinion 197 N.Y. 353 [90 N.E. 966, 26 L.R.A.N.S. 1013], sustained a conviction of the proprietor of a drug store on evidence that his clerk had sold a medicinal preparation not ''in the presence of and under the personal supervision of a licensed pharmacist''; the pharmacist employed by the owner was in the laboratory across the street. The statute read: ''Unlicensed employés or assistants shall not be allowed to prepare or dispense receipts or prescriptions or to sell or furnish medicines or poisons except in the presence of and under the personal supervision of a licensed pharmacist.'' The court stated (102 N.Y.S. 508):

"The defendants, from all that appears, could have complied with the law in every particular by employing one other licensed pharmacist, and arranging that at least one pharmacist be in the establishment at every moment during business. The suggestion that the statute, when literally construed, becomes unreasonable and unconstitutional, fails to recognize the ample power of the Legislature to enact police regulations for the health and public welfare of the community, which can be threatened in no more perilous way than by the sale of medicines by inexperienced persons."

■ Whether knowledge is an essential element of permitting an act proscribed by statute is a matter of construction to be determined by considering the subject matter of the statute, its language, the evil sought to be prevented, its obvious purpose, and the consequences of the several constructions to which the statute may be susceptible. (*People* v. *Daniels,* 118 Cal.App.2d 340, 343 [257 P.2d 1038] ; 14 Cal.Jur.2d 268, § 81.) ■ "Statutes punishing the sale of adulterated or mislabeled foods, penalizing the selling of commodities on the basis of falsely stated weight or measure, prohibiting the sale of intoxicating liquor, or prohibiting the mere possession of certain objects are examples of legislation positively forbidding certain acts and imposing criminal liability regardless of knowledge." (14 Cal.Jur.2d 269, § 81.)

■ Where "qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense it is held that guilty knowledge and intent are not elements of the offense." (*In re Marley,* 29 Cal.2d 525, 529-530 [175 P.2d 832].)

■ In construing section 4385 we must have regard to the evil sought to be remedied or prevented. ■ The suspension or revocation of a license to engage in a profession is not penal ; its purpose is to protect the public from incompetence and lack of integrity in those practicing the profession. (*Murrill* v. *State Bd. of Accountancy,* 97 Cal.App.2d 709, 711-712 [218 P.2d 569].) ■ Although the statute contains penal provisions, it is remedial in nature and belongs to that class of legislation which has for its objective the health and safety of the public. The purpose is to prevent the filling of prescriptions and the sale of drugs by any person not a registered pharmacist, and to carry out that purpose a penalty is imposed on the person who permits him to do so. (*People* v. *Arthur,* 1 Cal.App.2d Supp. 768, 771 [32 P.2d 1002].)

■ The business of compounding prescriptions and selling

drugs is intimately connected with and has a vital relationship to the health, safety, and welfare of the public. Public safety must be regarded as superior to private rights.

Bearing on the proper construction of section 4385 are sections 4050 and 4054. Section 4050 provides: "Except as otherwise provided in this chapter, it is unlawful for any person to manufacture, compound, sell or dispense any drug, poison or chemical, or to dispense or compound any prescription of a medical practitioner, unless he is a registered pharmacist under the provisions of this chapter."

Section 4054 provides: "Every store, dispensary, pharmacy, laboratory or office for the sale, dispensing or compounding of drugs or chemicals, or for the dispensing of prescriptions of medical practitioners, shall be in charge of a registered pharmacist."

It seems clear from the statutes with respect to the suspension and revocation of licenses that the Legislature has differentiated between knowingly permitting an act and merely permitting it; and that when it intends that the act must be knowingly permitted, it has said so.[6] Section 24200

[6]Section 1320 provides that the license of a clinical laboratory technologist or technician may be revoked or suspended for "(e) Permitting a registered clinical laboratory technician trainee to perform tests, procure specimens, or act for the director in the absence of a duly licensed clinical laboratory technician, technologist, or physician and surgeon. ... (i) Knowingly accepting an assignment for clinical laboratory tests or specimens from and the rendering a report thereon to persons not licensed by law to submit such specimens or assignments." Section 1747 provides: "The board may take action under Article 4 of this chapter against any licensed dentist who shall permit any dental hygienist operating under his supervision to perform any operation other than that permitted under the provisions of this article. . . ." With respect to physicians and surgeons, section 2379 provides: "The wilful betraying of a professional secret constitutes unprofessional conduct within the meaning of this chapter"; and section 2389 provides that "permitting or allowing another person to use his certificate in the practice of any system or mode of treating the sick or afflicted constitutes unprofessional conduct within the meaning of this chapter." With respect to optometrists, section 3106 provides: "The permitting of another to use his certificate of registration for any purpose constitutes unprofessional conduct." With respect to barbers, section 6601 provides: "Permitting any person in one's employ, supervision or control to practice as an apprentice unless that person has a certificate of registration as a registered apprentice is unlawful." Section 6606 provides: "It is unlawful for any barber or apprentice to knowingly continue the practice of barbering, or for any student knowingly to continue as a student in any college while he has an infectious, contagious or communicable disease." With respect to contractors, section 7118 provides: "Knowingly entering into a contract with a contractor while such contractor is not licensed as provided in this chapter constitutes a cause for disciplinary action." As grounds for disciplinary action of a

specifies as one of the grounds for the suspension or the revocation of a liquor license, "the permitting of a violation by a licensee" of certain parts of the code. It is consistently held that the owner of a liquor license has the responsibility to see to it that the license is not used in violation of law,

cosmetologist, section 7431 provides: "(h) Permitting a certificate of registration or license to be used where the holder is not personally, actively and continuously engaged in business. (i) Failure to display the license." Section 7551 provides that the license of a private detective may be suspended or revoked if he has "(g) . . . permitted any employee to commit, any act which would be cause for the suspension or revocation of a license, or grounds for the denial of an application for a license. (h) Wilfully failed or refused to render to a client services or a report as agreed between the parties and for which compensation has been paid or tendered in accordance with the agreement of the parties." With respect to the holder of a license of a structural pest control contractor, section 8648 provides: "Knowingly authorizing, directing, conniving at or aiding in the publication, advertisement, distribution or circulation of any material by false statement or representation concerning his business is a ground for disciplinary action"; and section 8652 provides: "Failure of an operator to make and keep all inspection reports, contracts, documents, and records, for a period of not less than two years after completion of any work or operation for the control of wood destroying pests or organisms, is a ground for disciplinary action." Section 8954 provides that the license of a yacht and ship broker may be suspended or revoked if he "(i) Quotes prices higher than the gross listing prices"; and section 8955 provides it may be suspended or revoked if he "(c) Knowingly authorizes, directs, connives, or aids in the publication, advertisement or distribution or circulation of any material false statement or misrepresentation concerning his business or any such transaction under this chapter." Section 9594.9 provides that a cause for disciplinary action of a cleaner, dyer, or presser exists for "allowing one's license to be used by an unlicensed person, or acting as agent or partner or associate, or otherwise, of an unlicensed person, with the intent to evade the provisions of" the code. (Also see section 9727(b) re the grounds for suspension or revocation of the license of any cemetery licensee.) Section 10177 provides that a real estate license may be suspended or revoked if the licensee has "(c) Knowingly authorized, directed, connived at or aided in the publication, advertisement, distribution, or circulation of any material false statement or representation concerning his business or any land or subdivision (as defined in Chapter 1 of Part 2 of this division) offered for sale. . . . (h) If, as a broker licensee, failed to exercise reasonable supervision over the activities of his salesmen." Section 10302(c) provides that the real estate commissioner may suspend or revoke the license of any business opportunity broker who has "Knowingly authorized, directed, connived at or aided in the publication, advertisement, distribution, or circulation of any material false statement or representation concerning his business or any business opportunity offered for sale." Section 10562 provides that a mineral, oil and gas broker's license may be suspended or revoked if the licensee "(a) Procured, or attempted to procure, a mineral, oil and gas license, for himself or any salesman, by fraud, misrepresentation or deceit, or by making any material misstatement of fact in an application for a mineral, oil and gas license. . . . (c) Knowingly, authorized, directed, connived at or aided in the publication, advertisement, distribution, or circulation of any material false statement or representation concerning his business or any mineral, oil

and that whatever is permitted by the agents and employees of a licensee is attributed to the licensee.[7] In *Mantzoros* v. *State Bd. of Equalization*, 87 Cal.App.2d 140 [196 P.2d 657], the license of a liquor dealer was held properly suspended because persons were served whiskey at a forbidden hour, notwithstanding the licensee's employee had made the sale which was not shown to be known to, directed by, or authorized by the licensee.

▪ If the element of knowledge constitutes a necessary part of the offense, it must be read into the statute by construction. We do not think it was so intended. The fact that no words expressing that idea are in the statute, when one word (knowingly) would have sufficed for that purpose, is a strong indication of the legislative intent that the offense should be complete without it. The Legislature may have believed that the purpose of the statute could be best accomplished by the absolute inhibition of the compounding of prescriptions and the selling of drugs except by a registered pharmacist. We think the statute binds a pharmacist to affirmatively prevent the filling of prescriptions and the sale of drugs by an unregistered person.

▪ With respect to the determination of the board that petitioner violated section 4386 in that he, as proprietor of a pharmacy, failed or neglected to place in charge of the pharmacy a registered pharmacist, petitioner asserts he was in actual charge of the store and that his absence of 45

---

or gas property offered for sale.'' Section 24200.5 provides that a liquor license shall be revoked if a retail licensee has ''knowingly permitted the illegal sale, or negotiations for such sales, of narcotics upon his licensed premises,'' whereas the license may be revoked if he has merely ''permitted'' any person to solicit or encourage others to buy drinks in the premises. Section 25658(c) provides ''Any on-sale licensee who knowingly permits a person under the age of 21 years to consume any alcoholic beverage in the on-sale premises, whether or not the ·licensee has knowledge that the person is under the age of 21 years, is guilty of a misdemeanor.''

[7]*Mantzoros* v. *State Bd. of Equalization*, 87 Cal.App.2d 140, 144 [196 P.2d 657]; *Swegle* v. *State Bd. of Equalization*, 125 Cal.App.2d 432, 438 [270 P.2d 518]; *Cornell* v. *Reilly*, 127 Cal.App.2d 178, 186 [273 P.2d 572]; *Cooper* v. *State Bd. of Equalization*, 137 Cal.App.2d 672, 678 [290 P.2d 914]; *Maxwell Cafe* v. *Department Alcoholic Bev. Control*, 142 Cal.App.2d 73, 76 [298 P.2d 64]; *Endo* v. *State Bd. of Equalization*, 143 Cal.App.2d 395, 402 [300 P.2d 366]; *Mercurio* v. *Department of Alcoholic etc. Control*, 144 Cal.App.2d 626, 630-631 [301 P.2d 474]; *Oxman* v. *Department of Alcoholic etc. Control*, 153 Cal.App.2d 740, 751 [315 P.2d 484]; *Munro* v. *Alcoholic etc. Appeals Board*, 154 Cal.App.2d 326, 330 [316 P.2d 401]; *Karides* v. *Department Alcoholic Bev. Control*, 164 Cal.App.2d 549, 552-553 [331 P.2d 145]; anno: 3 A.L.R.2d 107.

minutes does not mean that he failed or neglected to leave a registered pharmacist in charge. The original Pharmacy Act provided:

"Every store, dispensary, pharmacy, laboratory or office for the sale, dispensing or compounding of drugs, medicines or chemicals, or for the dispensing of prescriptions of medical practitioners, shall be in charge of a registered pharmacist. *A registered assistant pharmacist may be left in charge of a store, dispensary, pharmacy, laboratory or office for the sale, dispensing, or compounding of drugs, medicines or chemicals or for the dispensing of prescriptions of medical practitioners only during the temporary absence of the registered pharmacist. Temporary absence within the meaning of this act shall be held to be only those unavoidable absences which may occur during a day's work, and when the registered pharmacist in charge shall be within immediate call, ready and able to assume the direct supervision of said pharmacy.* No registered assistant shall conduct a pharmacy." (Emphasis added.) (Stats., 1905, ch. CDVI, p. 535-536.) In 1933 the statute was amended and the italicized portion was omitted. (Stats., 1933, ch. 836, p. 2193.) The statute was codified in 1937 as section 4036 of the Business and Professions Code, reading: "Every store, dispensary, pharmacy, laboratory or office for the sale, dispensing or compounding of drugs, medicines, or chemicals, or~for the dispensing of prescriptions of medical practitioners, shall be in charge of a registered pharmacist or a licentiate in pharmacy. No registered assistant shall conduct a pharmacy."

In 1943 section 4036 was amended by omitting the second sentence. (Stats., 1943, ch. 510, p. 2052.) In 1955 section 4036 was renumbered section 4054.

In 1937 section 4232 was added to the code, reading: "Any proprietor of a pharmacy, who fails or neglects to place in charge of such pharmacy a registered pharmacist, or any proprietor, who by himself, or by any other person, permits the compounding of prescriptions, or the vending of drugs, medicines or poisons, in his store or place of business, except by a registered pharmacist, or registered assistant pharmacist is guilty of a misdemeanor...." (Stats., 1937, ch. 425, p. 1382.)

In 1943 section 4232 was amended by omitting the words "or registered assistant pharmacist." (Stats., 1943, ch. 510, p. 2053.) In 1955 section 4232 was renumbered section 4386 and amended by inserting a comma after the word "fails,"

and by omitting the word "medicines." (Stats., 1955, ch. 550, p. 1054.)[8]

Since the original Pharmacy Act was repeatedly amended by the Legislature by omitting the part which provided that a registered assistant pharmacist might be left in charge of a pharmacy during the temporary absence of the registered pharmacist, and since the Legislature in 1937 added section 4232 by providing "Any proprietor of a pharmacy, *who fails or neglects to place*"[9] a registered pharmacist in charge of his pharmacy and in 1955 reenacted the statute in substantially the same language, it seems manifest the Legislature intended that the proprietor of a pharmacy must at all times while the pharmacy is open for business have a registered pharmacist in charge or he must close the pharmacy.

We conclude that the findings of the board that petitioner violated sections 4385 and 4386 are supported by substantial evidence.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

[8]Section 4386: "Any proprietor of a pharmacy, who fails, or neglects to place in charge of such pharmacy a registered pharmacist, or any proprietor, who by himself, or by any other person, permits the compounding of prescriptions, or the vending of drugs or poisons, in his store or place of business, except by a registered pharmacist, is guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in this chapter."

[9]Emphasis added.