Opinion
 

 McKINSTER, J.
 

 The defendants, Charles and Marilyn Telfer, appeal from their respective convictions of various drug-related offenses. We affirm in part and reverse in part.
 

 Factual and Procedural Background
 

 While executing a search warrant at the defendants’ residence in Apple Valley on August 24, 1988, deputy sheriffs of the County of San Bernardino discovered approximately two pounds of methamphetamine, bottles and drums of chemicals, and a variety of laboratory equipment. Upon analysis, the chemicals included hydriodic acid, red phosphorus, and ephedrine hydrochloride. Each of those three chemicals is used to make methamphetamine. Some of the laboratory equipment contained methamphetamine.
 

 In an amended information, both of the defendants were charged with: manufacturing methamphetamine, in violation of Health and Safety Code
 
 *657
 
 section 11379.6
 
 [1]
 
 (count I); possession of hydriodic acid and ephedrine with intent to manufacture methamphetamine, in violation of section 11383, subdivision (c) (count II); and possession of methamphetamine with intent to sell, in violation of section 11378 (count III).
 

 Charles demurred to count II of the amended information, on the grounds that the substance proscribed by section 11383 was hydriotic acid, not hydriodic acid as alleged in the information, and thus “the facts stated do not constitute a public offense . . . .” (Pen. Code, § 1004, subd. 4.) Marilyn joined in the demurrer. After the trial court overruled it, both defendants pleaded not guilty.
 

 A jury found Charles guilty on all three counts. Marilyn was acquitted on the manufacturing count, but was found guilty as to counts II and III. Charles was sentenced to the aggravated term of seven years on count I. On counts II and III, he was sentenced to the middle terms of four and two years, respectively, both to run concurrently with that imposed on count I. Marilyn received a sentence of the middle terms of four and two years on counts II and III, respectively, to be served concurrently.
 

 Contentions
 

 The defendants contend that the trial court erred by instructing the jury with CALJIC No. 1.20 (5th ed. 1988).
 
 [2]
 
 Charles also challenges the trial court’s use of CALJIC Nos. 3.30, 4.35, and 4.36. Finally, both defendants contend that the evidence does not support their conviction on count II, arguing that there was no evidence that they possessed the chemicals specified in subdivision (c) of section 11383.
 

 In an unpublished portion of this opinion, we find that the trial court’s erroneous jury instruction regarding mistake of fact (CALJIC No. 4.35) requires the reversal of the defendants’ convictions as to counts II and III. Otherwise, we affirm.
 

 Discussion
 

 A.
 
 CALJIC No.
 
 1.20
 
 *
 

 
 *658
 
 B.
 
 CALJIC No. 3.30
 

 In count I of the information, the defendants were charged with manufacturing methamphetamine in violation of section 11379.6.
 
 [6]
 
 The jury was instructed with CALJIC No. 3.30, concerning general criminal intent.
 
 [7]
 
 Charles contends that the jury should have been instructed that, to prove a violation of section 11379.6, the People must show not only that the defendant manufactured a controlled substance, but also that the defendant knew that the substance which he had manufactured was that controlled substance. Noting that knowledge of the narcotic nature of the substance possessed is a necessary element of a charge of possessing a controlled substance (citing
 
 People
 
 v.
 
 Jenkins
 
 (1979) 91 Cal.App.3d 579, 583 [154 Cal.Rptr. 309]), he argues that “[t]here is no reason, in law or in logic, why that requirement should not also apply to section [11379.6.]”
 

 As will be shown, we conclude that there is no reason to extend the judicially created requirement of knowledge of the physical character of a substance to a charge of manufacturing under section 11379.6.
 

 CALJIC No. 3.30 embodies the statutory requirement that, ordinarily, “[i]n every crime or public offense there must exist a union, or joint operation of act and intent . . .” (Pen. Code, § 20.) That intent is variously known as mens rea, a guilty mind, guilty knowledge, or some other term denoting a culpable mental state. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, §§ 97-98, pp. 115-117.)
 

 However, that general rule does not always apply to public welfare offenses created by statute. (1 Witkin & Epstein,
 
 supra,
 
 § 110, at pp. 129-131.) As our Supreme Court said long ago: “A mistake of fact, or a want of intent, is not in every case a sufficient defense for the violation of a criminal statute. Statutes enacted for the protection of public morals, public health, and the public peace and safety are apt illustrations of the rule just
 
 *659
 
 announced. [Citations.] . . . ‘The maxim
 
 actus non facit reum, nisi mens sit rea,[
 

 8
 

 ]
 
 does not always apply to crimes created by statute, and therefore if a criminal intent is not an essential element of a statutory crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the Legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. . . .”’
 
 (People
 
 v.
 
 McClennegen
 
 (1925) 195 Cal. 445, 469-470 [234 P. 91], quoting from 8 R.C.L., p. 62.)
 

 The Supreme Court applied that rule to a charge of possession of marijuana in violation of former section 11160
 
 [9]
 
 in
 
 People
 
 v.
 
 Gory
 
 (1946) 28 Cal.2d 450 [170 P.2d 433]. There, marijuana was discovered in a box near the defendant’s bed in a dormitory room shared by 30 other men. The defendant denied any knowledge of the presence of the marijuana in his box. The issue on appeal was the trial court’s refusal to instruct the jury that guilt required findings that the defendant knowingly possessed the objects and knew of their character.
 

 Citing
 
 McClennegen,
 
 the court held that mere possession was sufficient to constitute the statutory offense.
 
 (Gory, supra,
 
 28 Cal .2d at pp. 453-454.) However, in explaining the meaning of “possession,” the court reasoned that a person could not possess an object unless that object was within that person’s intentional control, and that a person could not intend to control an object unless he knew of the object’s existence.
 
 (Id.,
 
 p. 455.) Accordingly, the court drew a “distinction between (1) knowledge of the character of the object and the unlawfulness of possession thereof as embraced within the concept of a specific intent to violate the law, and (2) knowledge of the presence of the object as embraced within the concept of ‘physical control with the intent to exercise such control,’ which constitutes the ‘possession’ denounced by the statute. It is ‘knowledge’ in the first sense which is . . . immaterial but ‘knowledge’ in the second sense is the essence of the offense.”
 
 (Id.,
 
 pp. 455-456, italics omitted.) It held that the jury should have
 
 *660
 
 been instructed that the defendant had to be aware of the presence of the marijuana in the box, but that the instruction regarding knowledge of the character of that substance was properly refused.
 
 (Id.,
 
 p. 456.)
 

 In substance, the court described three types of knowledge: (1) knowledge of the presence or existence of the substance; (2) knowledge of the physical character of that substance, i.e., that the substance is marijuana; and (3) knowledge of the legal character of the substance, i.e., that marijuana is illegal. Of these, only the first was an element of the offense, because a person cannot intentionally commit the proscribed act—possession—without knowledge of the existence of the substance being possessed.
 

 Some subsequent decisions followed the distinction drawn in
 
 Gory,
 
 holding merely that knowledge of the presence of the substance is required. (See, e.g.,
 
 People
 
 v.
 
 Martin
 
 (1946) 76 Cal.App.2d 317, 319 [172 P.2d 910];
 
 People
 
 v.
 
 Rumley
 
 (1950) 100 Cal.App.2d 6, 8 [222 P.2d 913];
 
 People
 
 v.
 
 Lotrean
 
 (1953) 120 Cal.App.2d 583, 584 [261 P.2d 543]; and
 
 People
 
 v.
 
 Garcia
 
 (1954) 124 Cal.App.2d 822, 827-828 [269 P.2d 673].) Other cases, however, interpreted
 
 Gory
 
 to require proof that the defendant also knew the physical character of the article. “The prosecution must establish that the defendant had knowledge of the presence of the article and that it was marijuana.”
 
 (People
 
 v.
 
 Batwin
 
 (1953) 120 Cal.App.2d 825, 827 [262 P.2d 88]; accord,
 
 People
 
 v.
 
 Cole
 
 (1952) 113 Cal.App.2d 253, 258 [248 P.2d 141];
 
 People
 
 v.
 
 Walker
 
 (1953) 121 Cal.App.2d 173, 174 [262 P.2d 640];
 
 People
 
 v.
 
 Rice
 
 (1954) 123 Cal.App.2d 124, 125 [266 P.2d 200]; and
 
 People
 
 v.
 
 Candiotto
 
 (1954) 128 Cal.App.2d 347, 350-353 [275 P.2d 500], disapproved on another ground in
 
 People
 
 v.
 
 Gould
 
 (1960) 54 Cal.2d 621, 630 [7 Cal.Rptr. 273, 354 P.2d 865].)
 

 This conflict was settled by
 
 People
 
 v.
 
 Gorg
 
 (1955) 45 Cal.2d 776 [291 P.2d 469], which quoted with approval the following rule from
 
 Candiotto
 
 and
 
 Walker.
 
 “In order to sustain a conviction of possession of narcotics it must be shown that the defendant had either physical or constructive possession, and that he was aware that the substance of which he had possession was a narcotic.” (45 Cal.2d at p. 780.)
 

 Gorg
 
 made no attempt to explain the seemingly contrary ruling in
 
 Gory.
 
 This omission was cured in
 
 People
 
 v.
 
 Winston
 
 (1956) 46 Cal.2d 151 [293 P.2d 40], in which the Supreme Court said that the requirement of knowledge of the physical character of the substance was “implicit” in its decision in
 
 Gory.
 
 (46 Cal.2d at p. 159.) After quoting the language by which
 
 Gory
 
 had distinguished between the different types of knowledge, the court redefined the dividing line this way: “This distinction was meant to point out the difference between defendant’s possession of marijuana with knowledge that
 
 *661
 
 it was in disregard of the law and therefore indicating his specific intent to violate the law, and defendant’s possession of marijuana knowing its nature but innocent that its possession constituted a violation of the law.”
 
 (Id.,
 
 at p. 160.) The court then proceeded to disapprove all of the cases relied upon by the
 
 Gory
 
 opinion to the extent that they indicated that possession of narcotics, without knowledge of their narcotic nature, would support a conviction.
 
 (Ibid.)
 

 As a result of that interpretation of
 
 Gory,
 
 it is now clear that, in regard to a prosecution for possession of a narcotic, “knowledge of the narcotic character of the article possessed is an essential ingredient of the offense” of possession of narcotics.
 
 (Winston, supra,
 
 46 Cal.2d at p. 161; accord,
 
 People
 
 v.
 
 Williams
 
 (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146].) This same requirement of knowledge of the physical character of the substance has been extended, without analysis, to prosecutions for the sale of controlled substances.
 
 (People
 
 v.
 
 Ballard
 
 (1956) 145 Cal.App.2d 94, 99 [302 P.2d 89];
 
 People
 
 v.
 
 Basler
 
 (1963) 217 Cal.App.2d 389, 398 [31 Cal.Rptr. 884];
 
 People
 
 v.
 
 Lopez
 
 (1967) 254 Cal.App.2d 185, 188 [62 Cal.Rptr. 47];
 
 People
 
 v.
 
 Innes
 
 (1971) 16 Cal.App.3d 175, 178 [93 Cal.Rptr. 829];
 
 People
 
 v.
 
 Daniels
 
 (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232].)
 

 The defendant asks us to extend this same rule to the manufacturing of controlled substances. The answer to that request depends upon whether knowledge of the physical character of the substance being manufactured is an element of the statutory offense.
 
 (People
 
 v.
 
 McClennegen, supra,
 
 195 Cal. at p. 469.) To determine the Legislature’s intent, we look first to the language of the statute.
 
 [10]
 

 (People
 
 v.
 
 Knowles
 
 (1950) 35 Cal.2d 175, 182 [217 P.2d 1];
 
 People
 
 v.
 
 Aston
 
 (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) Nothing in the words chosen by the Legislature either explicitly or implicitly conditions guilt upon knowledge of the physical character of the substance being manufactured. To the contrary, its failure to include any qualifying words such as “knowingly” or “intentionally” indicates that it did not intend that either guilty knowledge or intent would be elements of the offense.
 
 (In re Marley
 
 (1946) 29 Cal.2d 525, 529 [175 P.2d 832];
 
 Brodsky
 
 v.
 
 Cal. State Bd. of Pharmacy
 
 (1959) 173 Cal.App.2d 680, 688 [344 P.2d 68].)
 

 Of course, the absence in former sections 11160 and 11500 of a statutory requirement of knowledge of the physical character of the substance did not prevent the judicial addition of such a requirement in cases involving the possession of controlled substances, such as
 
 Winston.
 
 We have searched those cases for a rationale which would apply to other fact situations, but
 
 *662
 
 have come up empty-handed. (Cf.
 
 People
 
 v.
 
 Corkrean
 
 (1984) 152 Cal.App.3d 35, 37-38 [199 Cal.Rptr. 375].)
 

 For instance, the reasoning which motivated the court in
 
 Gory
 
 was that a person could not intentionally possess an article unless the supposed possessor knew of the existence of the article.
 
 [11]
 
 However, it is certainly possible for a person to know of the existence of an article and to intentionally exercise physical control of that article, even though that person does not know the true physical character (such as the chemical composition) of that article. For instance, a person may knowingly possess a bag of white crystals which he believes to be sugar, although the substance is actually methamphetamine.
 

 That rationale, therefore, does not support the result in
 
 Gorg
 
 and
 
 Winston,
 
 which expanded the rule of
 
 Gory
 
 to include knowledge of the physical character of the item possessed. The failure of that rationale to support the expansion of that knowledge requirement to a statute prohibiting manufacturing is even clearer, since (1) the concept of possession is entirely absent from the statute, and (2) one may intentionally engage in manufacturing— may intentionally mix two or more reactive chemicals together—without knowing the physical character of the substance which will be produced by such a mixture.
 

 The only other rationale for the rule in
 
 Winston
 
 appears to be that relied on by
 
 People
 
 v.
 
 Cole, supra,
 
 113 Cal.App.2d 253. There, the court said that the possibility that a person could be criminally prosecuted for possession of marijuana when that person was under the honest but mistaken belief that the substance was actually alfalfa, tobacco or a roadside weed “would so clearly pass the bounds of reason as to be unthinkable.”
 
 (Id.,
 
 p. 258.)
 

 
 *663
 
 While such a result may have been unthinkable to the
 
 Cole
 
 court, the imposition of criminal sanctions despite the lack of proof of any criminal knowledge or intent has long been approved. “[T]here are some acts made crimes by the very terms of the law where the fraudulent or wicked intent is conclusively presumed from the commission of the act itself or where the act is denounced as criminal without regard to the facinorous intent . . . .”
 
 (Matter of Application of Ahart
 
 (1916) 172 Cal. 762, 764 [159 P. 160].) Thus, intent is not an element of an offense if the Legislature has excluded it.
 
 (People
 
 v.
 
 Vogel
 
 (1956) 46 Cal.2d 798, 801 [299 P.2d 850].) It may do so expressly, or by implication from a statute which “is an expression of a legislative policy to be served by strict liability.”
 
 (People
 
 v.
 
 Wells
 
 (1968) 261 Cal.App.2d 468, 478 [68 Cal.Rptr. 400].)
 

 For example, “[u]nder many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. . . . The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.”
 
 (People
 
 v.
 
 Vogel, supra,
 
 46 Cal.2d at p. 801, fn. 2, describing offenses which are, “by necessary implication,” exempt from the intent requirement of Pen. Code, § 20.)
 

 “The principle upon which such holdings are based is expressed as follows . . . : ‘There are many acts that are so destructive of the social order . . . that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant, [¶] In these cases it is the duty of the defendant to know what the facts are that are involved or result from his acts or conduct.’ ”
 
 (In re Marley, supra,
 
 29 Cal.2d at p. 529, quoting from
 
 State
 
 v.
 
 Weisberg
 
 (1943) 74 Ohio App. 91 [55 N.E.2d 870] [29 Ohio Op. 274, 55 N.E.2d 870]; see generally
 
 People
 
 v.
 
 Travers
 
 (1975) 52 Cal.App.3d 111 [124 Cal.Rptr. 728] and 1 Witkin & Epstein,
 
 supra,
 
 §§ 110-111, pp. 129-132.)
 

 The regulation of the manufacturing of drugs is one of these exceptional cases. “Because of the great danger to the public health and safety that the preparation, compounding or sale of adulterated or misbranded drugs entails, the public interest in demanding that those who prepare, compound, or sell drugs make certain that they are not adulterated or misbranded, and the belief that although an occasional nonculpable offender may be punished, it is necessary to incur that risk by imposing strict liability to prevent the escape of great numbers of culpable offenders, public welfare statutes like
 
 *664
 
 section 26280[
 
 12
 
 ] are not ordinarily governed by section 20 of the Penal Code and therefore call for the sanctions imposed even though the prohibited acts are committed without criminal intent or criminal negligence.”
 
 (People
 
 v.
 
 Stuart
 
 (1956) 47 Cal.2d 167, 172 [302 P.2d 5, 55 A.L.R.2d 705]; accord,
 
 Brodsky
 
 v.
 
 Cal. State Bd. of Pharmacy, supra,
 
 173 Cal.App.2d 680, 688-691.) If the production of adulterated but harmless drugs can be punished without showing any guilty knowledge, it is certainly appropriate to apply the same standard to the production of dangerous stimulants such as methamphetamine.
 
 [13]
 

 In short, neither the language of the statute, the rationale of the narcotic possession cases, nor the defendant offers any reason which would compel us to require that, as an element of section 11379.6, the People must prove that the defendant was aware of the physical character of the substance being manufactured, i.e., that the product of the chemical synthesis in which he was engaged was methamphetamine. “In these circumstances, and in the absence of constitutional compulsion to construe the statute as requiring [such] knowledge . . . , we are not at liberty to construe section [11379.6] to comport with our [or the defendant’s] notions of reasonableness. [Citation.] Whatever the merit of [the defendant’s] argument, the proper forum for its resolution is the Legislature, not this court.”
 
 (People
 
 v.
 
 Corkrean, supra,
 
 152 Cal.App.3d at p. 41;
 
 People
 
 v.
 
 Lanham
 
 (1991) 230 Cal.App.3d 1396, 1404 [282 Cal.Rptr. 62].)
 

 We conclude that CALJIC No. 3.30 adequately instructed the jury on the applicable law. Knowledge of the physical character of the substance being manufactured is not an element of section 11379.6. All that the People were required to prove was that the defendant had intentionally engaged in the activity specified in the statute: chemical extraction or chemical synthesis. So long as the product of the defendant’s activity was methamphetamine as had been charged, the defendant is guilty, even if he did not know that methamphetamine would be that product.
 

 C., D.
 
 *
 

 
 *665
 
 Disposition
 

 The judgment as to counts II and III is reversed as to both defendants. In all other respects, the judgment is affirmed.
 

 Timlin, Acting P. J„ and McDaniel, J.,
 
 *
 
 concurred.
 

 [1]
 

 Unless specified otherwise, all further section references are to sections of the Health and Safety Code.
 

 [2]
 

 Unless specified otherwise, all references to CALJIC are to the fifth edition.
 

 *
 

 See footnote,
 
 ante,
 
 page 1194.
 

 [6]
 

 Subdivision (a) of section 11379.6 provides: “Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000).” Methamphetamine is one of those controlled substances. (§ 11055, subd. (d)(2).)
 

 [7]
 

 As given, that instruction provides: “In the crime charged in Count 1 of the Information, namely, Manufacturing a Controlled Substance, there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he or she is acting with general criminal intent even though he or she may not know that his or her act is unlawful.”
 

 [8]
 

 “An act does not make [the doer of it] guilty, unless the mind be guilty . . . .” (Black’s Law Diet. (5th ed. 1979) p. 34.)
 

 [9]
 

 At that time, that section provided in relevant part that “no person shall possess ... a narcotic . . . .” (Stats. 1941, ch. 1116, § 5, p. 2820.) That provision was later renumbered as section 11500. (Stats. 1945, ch. 955, § 8, p. 1840.) See now section 11350.
 

 [10]
 

 See footnote 6.
 

 [11]
 

 Some cases appear to ascribe a different rationale to
 
 Gory.
 
 To do so, they focus upon the statutory definition of “knowingly” (Pen. Code, § 7, subd. 5), which the Supreme Court quoted in
 
 Gory
 
 (at 28 Cal.2d 456): “The word ‘knowingly’ imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission.” They reason that a person does not know of the facts which bring his act within former section 11160 unless he knows both the fact of possession and the fact that the item possessed is a narcotic. (See, e.g.,
 
 People
 
 v.
 
 Cole, supra,
 
 113 Cal.App.2d at p. 258.)
 

 That reasoning would be sound if the Legislature had incorporated that term into the statutory definition of the offense. However, “knowingly” did not appear in former section 11160 (Stats. 1941, ch. 1116, §5, p. 2820), and does not appear in the modern narcotics possession statutes (e.g., § 11350, subd. (a)). The Supreme Court in
 
 Gory
 
 appears to have cited the definition, not because it was an element of the statute, but because the jury instruction which it was interpreting had predicated guilt upon a finding that the defendant “knowingly had such objects in his possession.” (28 Cal.2d at p. 453.) It is therefore questionable whether the
 
 Gory
 
 court intended to add knowledge of the physical character of the object (as opposed to knowledge of its presence) as an element of a violation of that section.
 

 [12]
 

 Former section 26280 provided in relevant part: “The manufacture, production, preparation, compounding, packing, ... of any drug or device which is adulterated or misbranded is prohibited.” See now sections 26619 and 26620.
 

 [13]
 

 Besides, as the record before us demonstrates, the manufacture of methamphetamine requires specialized chemicals, equipment, and knowledge; it is not the sort of thing which inadvertently results from the mixture of household chemicals. The likelihood of anyone innocently manufacturing this substance is remote in the extreme.
 

 *
 

 See footnote,
 
 ante,
 
 page 1194.
 

 *
 

 Retired Associate Justice of the Court of Appeal Fourth District, sitting under assignment by the Chairperson of the Judicial Council.